MANATT, PHELPS & PHILLIPS, LLP
BRAD W. SEILING (Bar No. CA 143515)
BSeiling@manatt.com
BENJAMIN E. STRAUSS (Bar No. CA 301660)
BStrauss@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000
Facsimile: 310.312.4224

MANATT, PHELPS & PHILLIPS, LLP
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, California 94111
Telephone: 714.338.2701
Facsimile: 714.371.2550

Attorneys for Defendant
RECKITT BENCKISER, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINAMARIE BARRALES, DAVID FRANKLE, STACY PENNING, and MARIA SANTACRUZ, individually, on behalf of themselves, the general public, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RECKITT BENCKISER, LLC,<br><br>Defendant. | Case No. 5-25-cv-10643-BLF<br><br>**DEFENDANT RECKITT BENCKISER LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AND TO STRIKE PORTIONS OF COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Fed. R. Civ. P. 12(b), (f)]<br><br>Date:       June 25, 2026<br>Time:       9:00 a.m.<br>Courtroom:  2<br><br>Complaint Filed:  December 12, 2025<br>Trial Date:       None Set |

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on June 25, 2026, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 1, Fifth Floor, located in the San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, the Honorable Beth Labson Freeman presiding, Defendant Reckitt Benckiser, LLC ("RB"), will and hereby does move to dismiss and to strike certain portions of the class action complaint filed by Plaintiffs Tinamarie Barrales, David Frankle, Stacy Penning, and Maria Santacruz (collectively, "Plaintiffs") under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(f).

This motion is made on the grounds that (1) Plaintiffs lack standing to bring these claims because they fail to plausibly allege that they suffered injury of any kind; (2) Plaintiff Barrales lacks standing because RB does not own or operate the website she alleges she visited; (3) this Court lacks personal jurisdiction over RB for the claims alleged in Plaintiffs' complaint; (4) Plaintiffs' causes of action for violations of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631(a) and § 638.51 are untimely under the applicable statute of limitations; and (5) Plaintiffs fail to state claims as a matter of law for violations of CIPA § 631(a) and § 638.51, common law fraud, invasion of privacy, intrusion upon seclusion, unjust enrichment, and for recovery of punitive damages. Plaintiffs' claims fail because they do not plausibly allege that RB violated their rights to privacy or any conduct by an officer, director, or managing agent of RB sufficient to support punitive damages.

RB also moves to strike references to certain websites in the complaint on the grounds that Plaintiffs do not allege that they ever visited those websites.

The motion is based on this notice of motion; the accompanying memorandum of points and authorities; declaration of Arturo Petrozza, all pleadings, records, and files in this action; any evidence or argument presented at the hearing; and any and all papers on file with the Court.

Dated: February 20, 2026          MANATT, PHELPS & PHILLIPS, LLP


By:/s Brad W. Seiling
        Brad W. Seiling
        Brandon P. Reilly
        Benjamin E. Strauss
        Attorneys for Defendant
        RECKITT BENCKISER, LLC

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................10

II.  FACTUAL AND PROCEDURAL BACKGROUND..............................................................11

III.  PLAINTIFFS LACK ARTICLE III STANDING .................................................................12

    A.  Establishing Standing In Privacy Cases Requires More Than A Statutory Violation ......................................................................................................................13

    B.  Plaintiffs' Allegations Do Not Establish That They Suffered a Concrete Injury ..............14

    C.  Plaintiff Barrales Lacks Article III Standing Because RB Does Not Own or Operate the Enfamil Website She Visited ........................................................................16

IV.  THIS COURT LACKS PERSONAL JURISDICTION OVER RB ...........................................16

    A.  The Complaint Does Not Establish General Jurisdiction Over RB ...................................16

    B.  The Complaint Does Not Establish Specific Jurisdiction Over RB ..................................17

        1.  Prong One: There Is No Purposeful Direction Under the *Calder* Effects Test..........................................................................................................................17

            a.  Express Aiming...........................................................................................18

            b.  Foreseeable Harm ......................................................................................19

        2.  Prong Two: There Is No Harm Related to Forum-Related Activities ...................20

        3.  Prong Three: Fair Play and Substantial Justice....................................................20

V.  PLAINTIFFS FAIL TO STATE ANY VIABLE CLAIM FOR RELIEF AGAINST RB ............22

    A.  Plaintiffs' CIPA Claims Fail for Four Independent Reasons.............................................22

        1.  Plaintiffs' CIPA Claims Are Barred by the Statute of Limitations ......................22

        2.  Penal Code Sections 631 and 638.51 Do Not Apply to Online Tracking Technologies.........................................................................................................23

            a.  When the Legislature Wants to Extend a Statute to Encompass Online Technologies, It Does So—Expressly ..........................................24

            b.  Plaintiffs' Attempted Application of Sections 631 and 638.51 to Online Tracking Technologies Conflicts with CCPA ............................25

            c.  The Court Should Not Apply Sections 631 and 638.51 to Online Tracking Technologies........................................................................26

        3.  Plaintiffs' Section 638.51 Claims Fail Because They Allege No "Trap and Trace Device" or Pen Register........................................................................27

        4.  Plaintiffs' Section 631 Claims Fail Because They Do Not Allege Facts That Establish that RB Aided and Abetted Any CIPA Violation.........................27

    B.  Plaintiffs' Common Law Fraud Claims Do Not Satisfy Rule 9(b)....................................29

    C.  Plaintiffs' Common Law Invasion of Privacy Claims Fail................................................30

    D.  Plaintiffs' Intrusion Upon Seclusion Claims Fail ............................................................31

    E.  Plaintiffs' Unjust Enrichment Claims Fail with their Defective Fraud Claim..................32

    F.  Plaintiffs' Fail to State a Claim for Recovery of Punitive Damages ................................32

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

VI.   THE COURT SHOULD STRIKE REFERENCES TO WEBSITES THAT PLAINTIFFS NEVER VISITED..................................................................................................................33

VII.   CONCLUSION..................................................................................................................33

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

**TABLE OF AUTHORITIES**

**CASES**

*Astiana v. Hain Celestial Grp., Inc.,*
781 F.3d 753 (9th Cir. 2015) ...................................................................................................33

*Ayla, LLC v. Alya Skin Pty. Ltd.,*
11 F.4th 972 (9th Cir. 2021) ...................................................................................................21

*B.K. v. Desert Care Network,*
No. 23-CV-05021, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ............................................33

*Belluomini v. Citigroup, Inc.,*
2013 No. CV 13-01743 CRB .................................................................................................31

*BNSF Ry. Co. v. Tyrrell,*
581 U.S. 402 (2017) ...............................................................................................................17

*Brayton Purcell LLP v. Recordon & Recordon,*
606 F.3d 1124 (9th Cir. 2010) ...............................................................................................19

*Briskin v. Shopify, Inc.,*
135 F.4th 739 (9th Cir. 2025) ...............................................................................17, 18, 19, 20

*Cabral v. Supple, LLC,*
No. EDCV 12-85-MWF (OPX), 2012 WL 12895825 (C.D. Cal. Oct. 3, 2012) ..............32, 33

*Calder v. Jones,*
465 U.S. 783 (1984).........................................................................................................18, 19

*Casey v. U.S. Bank Nat'l Ass'n,*
127 Cal. App. 4th 1138 (2005) ...............................................................................................29

*Chevron U.S.A., Inc. v. Hammond,*
726 F.2d 483 (9th Cir. 1984) .................................................................................................26

*Cruz v. HomeBase,*
83 Cal. App. 4th 160 (2000) ...................................................................................................34

*Cybersell, Inc. v. Cybersell, Inc.,*
130 F.3d 414 (9th Cir. 1997) ...........................................................................................18, 19

*DFSB Kollective Co. v. Bourne,*
897 F. Supp. 2d 871 (N.D. Cal. 2012) ...................................................................................19

*Doe v. Eating Recovery Ctr. LLC,*
No. 23-CV-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)...................................26

*Dole Food Co. v. Watts,*
303 F.3d 1104 (9th Cir. 2002) ...............................................................................................21

*Esparza v. Kohl's, Inc.,*
723 F. Supp. 3d 934 (S.D. Cal. 2024).....................................................................................33

*Fiol v. Doellstedt,*
50 Cal. App. 4th 1318 (1996) .................................................................................................29

*Flanagan v. Flanagan,*
27 Cal. 4th 766 (2002) ......................................................................................................23, 24

*Folgelstrom v. Lamps Plus, Inc.,*
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011)...............................................32, 33

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

*Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*,
 104 Cal. App. 5th 1034 (2024) ...........................................................................................29

*Fredenberg v. City of Fremont*,
 119 Cal. App. 4th 408 (2004) ........................................................................................32, 33

*Fregosa v. Mashable, Inc.*,
 No. 25-CV-01094-CRB, 2025 WL 1083214 (N.D. Cal. Apr. 10, 2025)..............................19

*Greenstein v. Noblr Reciprocal Exch.*,
 585 F. Supp. 3d 1220 (N.D. Cal. 2022) ........................................................................13, 15

*Grimm v. City of Portland*,
 971 F.3d 1060 (9th Cir. 2020) ............................................................................................27

*Hale v. Morgan*,
 22 Cal. 3d 388 ....................................................................................................................26

*Hammerling v. Google LLC*,
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................................................32, 33

*Harrott v. County of Kings*,
 25 Cal. 4th 1138 (2001) ......................................................................................................26

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*,
 958 F.2d 295 (9th Cir. 1992) ..............................................................................................26

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
 72 F.4th 1085 (9th Cir. 2023) .............................................................................................19

*Hill v. Nat'l Collegiate Athletic Ass'n*,
 7 Cal. 4th 1 (1994) ........................................................................................................31, 32

*I.C. v. Zynga, Inc.*,
 600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..............................................................................16

*IIG Wireless, Inc. v. Yi*,
 22 Cal. App. 5th 630 (2018) ...............................................................................................29

*In re Facebook, Inc. Internet Tracking Litig.*,
 956 F.3d 589 (9th Cir. 2020) ..............................................................................................29

*In re Google, Inc. Privacy Pol'y Litig.*,
 No. 5:12-CV-001382-PSG, 2015 WL 4317479 (N.D. Cal. July 15, 2015)...........................15

*In re Yahoo Mail Litig.*,
 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................................................13, 31, 32

*Javier v Assurance IQ, LLC*,
 649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................................................22

*Javier v. Assurance IQ, LLC*,
 No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022)..................................................26

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ...........................................................................18, 20, 30, 31

*Khamooshi v. Politico LLC*,
 No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .........................13, 14, 15

*Kishnani v. Royal Caribbean Cruises Ltd.*,
 No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025)...........................13, 28

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) ...............................................................................................17

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 396382 (S.D. Cal. June 12, 2023) ........................13, 15

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................................................32, 33

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................................13, 16

*Massie v. Gen. Motors Co.*,
No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ..............................20

*Massie v. General Motors LLC*,
No. CV 21-787-RGA ,2022................................................................................................15

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) ...........................................................................................20

*Mavrix Photo Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ................................................................................................18

*MG Freesites Ltd. v. DISH Techs. L.L.C.*,
712 F. Supp. 3d 1318 (N.D. Cal. 2024) .................................................................................17

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)...........................................................................13, 14, 15

*Mikulsky v. Noom, Inc.*,
No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 2024) ...............................15

*Nasrawi v. Buck Consultants LLC*,
231 Cal. App. 4th 328 (2014) .................................................................................................29

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ...........................................................................................13, 14

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 WL 1237977 (Cal. Super. Apr. 1, 2025) ......................................28

*Robinson v. J.M. Smucker Co.*,
No. 18-CV-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019)..................................34

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .....................................................................................................29

*Saeedy v. Microsoft Corp.*,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ......................................15

*Saunders v. Sup. Ct.*,
27 Cal. App. 4th 832 (1994) .....................................................................................................29

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ...........................................................................................17, 21

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .............................................................................................................24

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ...............................15

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

- 7 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) ................................................................................................28

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..................................................................................................13

*Travis v. Assured Imaging LLC*,
No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10, 2021) ..........16

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ............29, 30

*Walden v. Fiore*,
571 U.S. 277 (2014) .............................................................................................17, 19

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......................................................................................29

*Xerox Corp. v. Far W. Graphics, Inc.*,
No. C-03-4059-JFPVT, 2004 WL 2271587 (N.D. Cal. Oct. 6, 2004)......................34

**STATUTES**

Cal. Civ. Code § 1798.110(c)(4)..................................................................................25

Cal. Civ. Code § 1798.115........................................................................................25, 26

Cal. Civ. Code § 1798.120a..........................................................................................25

Cal. Civ. Code § 1798.130............................................................................................25

Cal. Civ. Code § 1798.140(k).......................................................................................25

Cal. Civ. Code § 3294(a)..............................................................................................33

Cal. Civ. Code § 3294(b)..............................................................................................34

Cal. Civ. Proc. Code § 340(a) ......................................................................................22

Cal. Pen. Code § 502)...................................................................................................24

Cal. Pen. Code § 502(a)................................................................................................24

Cal. Pen. Code § 631......................................................................................23, 24, 25, 27

Cal. Pen. Code § 631(a) ........................................................................................ passim

Cal. Pen. Code § 632.01................................................................................................24

Cal. Pen. Code § 638.50(c)...........................................................................................28

Cal. Pen. Code § 638.51 ........................................................................................ passim

Cal. Pen. Code § 638.51(a)......................................................................................23, 28

Cal. Pen. Code § 638.52(d)(3) .....................................................................................24

Cal. Pen. Code § 638.52(f) ...........................................................................................24

Cal. Civ. Code § 1798.100......................................................................................25, 26

Delaware Personal Data Privacy Act, 6 Del. Code § 12D-101 (2025).........................21

New Jersey Data Protection Act, N.J. Stat. § 56:8-166.4 .............................................21

**OTHER AUTHORITIES**

11 CCR §§ 7000–7600..................................................................................................25

11 CCR §§ 7010–7012..................................................................................................25

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

- 8 -

11 CCR § 7013.................................................................................................25

11 CCR § 7022.................................................................................................25

11 CCR § 7024.................................................................................................25

11 CCR § 7025.................................................................................................25

11 CCR §§ 7026...............................................................................................25

11 CCR §§ 7050–7053......................................................................................25

Com. Sess. (Mar. 5, 2019) ...............................................................................26

Rest. 2d Torts, § 876 .......................................................................................29

Article III of the U.S. Constitution ..............................................12, 13, 14, 16

**RULES**

Fed. R. Civ. P. 9(b) ..............................................................11, 30, 31, 33

Fed. R. Civ. P. 12(b)(1)...............................................................12, 13

Fed. R. Civ. P. 12(f)...........................................................................34

U.S. Ct. of App. 9th Cir. R. 36-3(a)...................................................27

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

## I.      INTRODUCTION

This lawsuit represents another attempt to apply common law and statutory privacy theories to basic online tracking technologies. Plaintiffs allege that RB's use of online tracking software on its websites and the choice architecture for website visitors to opt out of such tracking amount to illegal wiretapping, invasions of privacy, and fraud. Plaintiffs' sprawling 76-page, 224-paragraph complaint says much about how Plaintiffs believe the third-party tracking software functions on RB's websites but very little about Plaintiffs' individual experiences, omitting allegations that describe precisely when they visited RB's websites and what communications with RB's websites allegedly were wiretapped by third parties allegedly without their consent. But Plaintiffs have alleged just enough to reveal that their claims against RB fail on almost every level and should be dismissed for numerous independent reasons.

*Lack Article III Standing.* Plaintiffs lack Article III standing to sue RB because they fail to plausibly allege that they suffered concrete injury as a result of RB's routine commercial behavior.

*Lack of Personal Jurisdiction.* This Court lacks personal jurisdiction for the claims alleged in Plaintiffs' complaint. The Court cannot exercise general jurisdiction over non-resident RB, and Plaintiffs' complaint fails to establish that their claims have a substantial connection with California.

*Failure to State a Claim On Which Relief Can Be Granted.* Even if Plaintiffs could surmount RB's jurisdictional challenges, their allegations fail to state any viable claim against RB.

1.      *The CIPA Claims Fail.* Plaintiffs' two claims for alleged violations of the California Invasion of Privacy Act ("CIPA"), in particular California Penal Code sections 631(a) ("Section 631") and 638.51 ("Section 638.51") fail for the following independent reasons:

- Plaintiffs' two CIPA claims are time-barred.

- Sections 631 and 638.51 do not apply to online tracking technologies.

- Plaintiffs' Section 638.51 claim fails because, as alleged, the "cookies and corresponding software code" allegedly embedded on RB's websites captured the "contents" of Plaintiffs' communications and thus cannot be trap and trace devices.

- Plaintiffs' Section 631 claim fails because they do not allege any viable theory of direct "wiretapping" liability, nor do they plead any facts establishing that RB aided and abetted any third-party CIPA violations.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

*2.    The Common Law Fraud and Unjust Enrichment Claims Fail*. Plaintiffs' common law fraud claims fail to satisfy Rule 9(b)'s heightened pleading standard because Plaintiffs fail to allege with specificity when the alleged misrepresentations occurred or how they were damaged as a result of the alleged misrepresentations. Because Plaintiffs do not allege an actionable fraud claim, their unjust enrichment claims based upon alleged fraud must also fail.

*3.    The Common Law Privacy Claims Fail*. Plaintiffs fail to state common law claims for invasion of privacy and intrusion upon seclusion because they do not allege a reasonable expectation of privacy in the information allegedly collected, nor do they allege any conduct by RB that would constitute a serious invasion of privacy or that could be considered highly offensive to a reasonable person.

*4.    Plaintiffs' Claims for Punitive Damages Fail*. Plaintiffs fail to state claims for recovery of punitive damages because they do not plausibly allege any conduct by an officer, director, or managing agent of RB sufficient to support punitive damages.

*5.    Motion to Strike*. RB also moves to strike allegations regarding RB websites that none of the Plaintiffs are alleged to have visited.

Any one of these defects standing alone would justify dismissal of Plaintiffs' complaint. Taken together, the defects should compel the Court to dismiss the complaint with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that RB owns and operates certain websites, including, durexusa.com, k-y.com, enfamil.com, airwick.us, biofreeze.com, clearasil.us; finishdishwashing.com; lysol.com; mucinex.com; veet.us; reckitt.com; woolite.us; and schiffvitamins.com. (Dkt. No. 1, Compl. ¶¶ 1, 25.) Plaintiffs allege that RB presented visitors of those websites with a "popup cookie consent banner" that disclosed that the websites use cookies and gave users the option to opt out of certain cookies and to control how they are tracked and how their personal data is used. (*Id*. ¶ 1.) According to Plaintiffs, even after users elected to "Disable All" cookies, RB nonetheless caused cookies—including from Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick, Google Analytics and YouTube), ByteDance Ltd. (TikTok), LiveRamp Holdings, Inc. (rlcdn.com), Salesforce, Inc. (Evergage), The Trade Desk, Inc. (adsrvr.org), and Snap Inc. (Snapchat) (the "Third Parties")—to be sent to visitors' browsers, stored on visitors' devices, and "transmitted" to the Third Parties along with user data. (*Id*. ¶¶ 2–3.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

DEFENDANT RECKITT BENCKISER LLC'S MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

Plaintiffs allege that these third-party cookies permitted *the Third Parties* to track and collect data regarding visitors' behaviors and communications, including their browsing history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, "and/or" geolocation data. (*Id*. ¶ 3.)

Plaintiffs all generally allege that they visited various of RB's websites "on one or more occasions during the last four years." (*See id*. ¶ 103, Barrales, enfamil.com; *id*. ¶ 113, Frankle, durexusa.com; *id*. ¶ 123, Penning, k-y.com, reckitt.com, and lysol.com; *id*. ¶ 133, Santacruz, k-y.com.) No Plaintiff alleges that they ever visited airwick.us, biofreeze.com, clearasil.us; finishdishwashing.com; mucinex.com; veet.us; woolite.us; or schiffvitamins.com. No Plaintiff alleges that they made purchases from any of RB's websites. No Plaintiff alleges which Third-Party cookies tracked their allegedly private communications or describes the precise communications that allegedly were tracked.

"On or about March 29, 2024, Plaintiffs' counsel notified RB of its ongoing invasions of privacy and alleged violations of law, as described [in their complaint]." (*Id*. at p. 1, n.1.)

More than one year later, on December 12, 2025, Plaintiffs filed their complaint asserting six claims: (1) invasion of privacy; (2) intrusion upon seclusion; (3) violation of Section 631; (4) violation of Section 638.51; (5) fraud; and (6) unjust enrichment.

## III.   <u>PLAINTIFFS LACK ARTICLE III STANDING</u>

A motion under Rule 12(b)(1) tests whether a complaint alleges grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction and the case must be dismissed. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 952 (S.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). A challenge under Rule 12(b)(1) can be facial or factual. *Id.* (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Where the attack is facial, "the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction." *Id.* Where the attack is factual "the court need not presume the truthfulness of the plaintiff's allegations." *Id.* (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

To establish Article III standing, each Plaintiff must allege an injury-in-fact that is concrete, particularized, and actual or imminent—not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A statutory violation, standing alone, does not suffice; "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

### A. <u>Establishing Standing In Privacy Cases Requires More Than A Statutory Violation</u>

The Ninth Circuit and district courts within the Circuit have dismissed privacy suits where, as here, plaintiffs allege only abstract statutory violations without real-world harm. *See, e.g.*, *Popa v. Microsoft Corp.*, 153 F.4th 784, 788–790 (9th Cir. 2025) (affirming dismissal of wiretapping claim for lack of standing under Rule 12(b)(1)); *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (dismissing for lack of standing and holding that routine website tracking data does not constitute a concrete privacy injury); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3–*4 (N.D. Cal. June 24, 2025) (dismissing claims where "Plaintiff alleges only that Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information.'"); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396382, at *3 (S.D. Cal. June 12, 2023) ("[A] bare CIPA violation by itself is insufficient to demonstrate Article III injury"); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1225–27 (N.D. Cal. 2022) (no standing where plaintiffs alleged data disclosure but no misuse).

Plaintiffs must plead facts demonstrating they have "a legally protectable privacy interest based on the nature of the information at issue." *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)) (dismissing complaint for lack of standing.) The Ninth Circuit recently held that information about a plaintiff's online interactions with a pet supply store website—"over 30 different categories" of information—contained "no embarrassing, invasive, or otherwise private information" collected by the third-party at issue, comparing the interaction "to a store clerk's observing shoppers." *Popa*, 153 F.4th at 786, 791. On this basis, the Ninth Circuit affirmed dismissal for lack of Article III standing. The same result should apply here. *See, e.g.*, *Khamooshi*, 2025 WL 2822879, at *3 (following *Popa* and dismissing with prejudice); *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (applying

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

*Popa* and dismissing under Article III where "Plaintiff has not 'plausibly alleged the infringement of any privacy interest.'") (cleaned up); *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (finding no standing under *Popa* because "Rodriguez's failure to demonstrate anything more than an alleged statutory violation is consequently fatal to her claim."); *Price v. Converse, Inc.*, No. 2:24-CV-08091-FLA (EX), 2025 WL 3295119, at *1 (C.D. Cal. Sept. 30, 2025).

### B.   Plaintiffs' Allegations Do Not Establish That They Suffered a Concrete Injury

Plaintiffs point to no concrete injury. Instead, Plaintiffs allege in conclusory fashion that they "have suffered an injury-in-fact, including the loss of money and/or property, as a result of Defendant's unfair, deceptive, and/or unlawful practices, including the unauthorized interception of their . . . browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, which have value as demonstrated by the use and sale of consumers' browsing activity, as alleged above." (Compl. ¶ 208.) In similar conclusory fashion, Plaintiffs contend that they suffered "(i) violation of their right to privacy, (ii) loss of value in their Private Communications, (iii) damage to and loss of Plaintiffs' and Class members' property right to control the dissemination and use of their Private Communications, and (iv) loss of their Private Communications to the Third Parties with no consent." (Compl. ¶ 189.) Plaintiffs further allege that they "suffered harm in the form of diminution of the value of their private and personally identifiable information and communications." (*Id*. ¶ 208.)

None of these purported harms constitute concrete injuries under Article III because they do not constitute "embarrassing, invasive, or otherwise private information." *See Popa*, 153 F.4th at 786, 791; *Khamooshi*, 2025 WL 2822879, at *3. And with respect to "user input data", it is well-settled that interception of information that is entered into a field or text box does not constitute a concrete injury. *Mikulsky*, 682 F. Supp. 3d at 864 (plaintiff inputting "her personal information in text fields" was insufficient to establish concrete injury); *Lightoller*, 2023 WL 3963823, at *4 (interception of "'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time'" is insufficient to demonstrate harm); *Khamooshi*, 2025 WL 2822879, at *2 (tracking "browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" was "insufficient to establish a concrete privacy injury").

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

Plaintiffs also cannot demonstrate concrete harm because there is no recognized right to privacy over anonymized data. *See, e.g.*, *Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (collecting cases and holding that anonymized data is "insufficiently personal"); *Massie v. General Motors LLC,* No. CV 21-787-RGA¸2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software"). *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 2024) is instructive on this point. There, a plaintiff asserted privacy claims based on inputting "sensitive personal health information" within text fields. *Id.* at *5. In dismissing the complaint for lack of standing, the District Court found that "Plaintiff's activity on Defendant's website was basically anonymous" because plaintiff did not enter "her name, email address, credit card details, or other contact information on Defendant's Website." *Id.*

The same is true here: Plaintiffs do not allege they provided *any* information that would enable RB (or anyone else) to identify any of the Plaintiffs. Like *Mikulsky*, Plaintiffs do not allege that they disclosed their names, email addresses, financial information, or bank records.

Finally, Plaintiffs cannot rely on the purported devaluation of their personal information to establish injury-in-fact. "[T]o successfully demonstrate injury in fact by diminution in value of [personal information], Plaintiffs must 'establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market.'" *Greenstein*, 585 F. Supp. 3d at 1229 (quoting *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016); citing *In re Google, Inc. Privacy Pol'y Litig.*, No. 5:12-CV-001382-PSG, 2015 WL 4317479, at *4 (N.D. Cal. July 15, 2015)). Plaintiffs plead neither element. While Plaintiffs assert the information has purported "value," they do not explain how their personal information has a particular value to them, nor do they explain how the value (if any) was impaired or whether they can no longer sell their personal information (if they could before). *See Travis v. Assured Imaging LLC*, No. CV-20-00390-TUC-JCH, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021) ("Plaintiffs have not alleged any facts explaining how their personal information became less valuable as a result of the ransomware attack or that they attempted to sell their personal information and could not because of the ransomware attack."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022) ("Even assuming the existence of a market for the information

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

taken in this case, the [complaint] is devoid of any allegations describing how the breach devalued plaintiffs' specific information . . . such that they are prevented from deriving economic benefit from this information in the future.").

For all these reasons, the Court should dismiss Plaintiffs' complaint for lack of standing.

## C. Plaintiff Barrales Lacks Article III Standing Because RB Does Not Own or Operate the Enfamil Website She Visited

Plaintiff Barrales' allegations relate to her alleged visit to enfamil.com at some point during the last four years. (*See* Compl. ¶¶ 103–112.) RB has never owned or operated enfamil.com. (Declaration of Arturo Petrozza ¶ 3.) Barrales does not allege that she ever visited any website owned or operated by RB. Therefore, she does not allege that she was harmed by any conduct of RB or that any "injury will be 'redressed by a favorable decision'" on the merits against RB. *Lujan*, 504 U.S. at 561. Accordingly, Plaintiff Barrales lacks standing to sue RB and her claims should be dismissed.

## IV. THIS COURT LACKS PERSONAL JURISDICTION OVER RB

A Rule 12(b)(2) motion tests whether a complaint alleges grounds for personal jurisdiction over the defendant. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d. at 800.

### A. The Complaint Does Not Establish General Jurisdiction Over RB

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citations omitted). "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are the corporation's place of incorporation and its principal place of business." *Id.*; *see MG Freesites Ltd. v. DISH Techs. L.L.C.*, 712 F. Supp. 3d 1318, 1325 (N.D. Cal. 2024) ("The general rule is that general

jurisdiction is only proper over a corporation in its state of incorporation or in the state of its principal place of business."); *see also Allen v. Shutterfly, Inc.*, No. 20-CV-02448-BLF, 2020 WL 5517170, at *3 (N.D. Cal. Sept. 14, 2020) ("These principles apply equally to limited liability companies.").

RB is a Delaware limited liability company; its members, headquarters, and principal place of business are in Parsippany, New Jersey. (Compl. ¶ 10.) Because RB is "at home" in Delaware and New Jersey, California lacks general jurisdiction over RB.

**B.      The Complaint Does Not Establish Specific Jurisdiction Over RB**

Where a forum state lacks general jurisdiction, a non-resident defendant can nevertheless be subject to specific jurisdiction if its "suit-related conduct" creates a "substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Courts analyze specific personal jurisdiction under a three-part test:

(1)      The non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof; or perform some act by which it purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)      the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)      the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 750–51 (9th Cir. 2025) (citing *Schwarzenegger*, 374 F.3d at 802; *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff "bears the burden of satisfying the first two prongs of the test." *Id*. at 751. If the plaintiff "fails to meet this burden, California courts lack specific personal jurisdiction." *Id*. Plaintiffs fail to meet their burden here.

**1.      Prong One: There Is No Purposeful Direction Under the *Calder* Effects Test**

Because Plaintiffs' claims sound in tort, this Court applies the "purposeful direction test" when analyzing the first prong of the specific jurisdiction inquiry. *Id*. (citing *Calder v. Jones*, 465 U.S. 783 (1984)). That analysis, referred to as the "*Calder* effects test," "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Id*. The complaint fails to allege facts sufficient to satisfy the second and third prongs of the *Calder* effects test.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

### a.      Express Aiming

To satisfy the second prong of the *Calder* effects test, a defendant operating a website is considered to have expressly aimed "its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous." *Id*. at 758 (citing *Ford Motor Co.*, 592 U.S. at 359) (internal quotation marks omitted). In making such a determination, courts consider various factors to "determine whether the website operator had done 'something more' in the forum state." *Id*. at 754. Those factors include "the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id*. (citing *Mavrix Photo Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1229 (9th Cir. 2011)). Notably, "no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

While the complaint broadly discusses how various website tracking technologies work, it lacks any facts related to the interactivity of the websites at issue or the geographic scope of RB's commercial ambitions via those websites. (*See generally* Compl.) Instead, the complaint alleges in conclusory fashion that "Defendant targeted California consumers" (*Id*. ¶ 97), but does not explain how RB "targeted" California consumers as opposed to all consumers who can access the websites around the world.

In reality, the complaint confirms that anyone with an Internet connection can visit any of the websites. Plaintiffs do not allege that they purchased any goods or services on the websites. In fact, the websites at issue are not e-commerce websites; visitors cannot make purchases from the RB sites. (Petrozza Declaration, ¶ 2.) Plaintiffs' allegations demonstrate that the websites are informational websites not targeted to California or its residents. *Compare Briskin*, 135 F.4th at 746 (exercising jurisdiction where plaintiff "asserts privacy-related torts arising from Shopify's activity in connection with his online purchase in California of athletic wear from a retailer in California") *with Cybersell*, 130 F.3d at 419 ("While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that [the non-resident defendant] deliberately directed its merchandising efforts toward Arizona residents.").

Even if the websites were considered interactive, "the mere operation of an interactive website that is accessible in a forum state does not necessarily subject the website owner or operator to personal

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

jurisdiction in that state." *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 1083214, at *2 (N.D. Cal. Apr. 10, 2025) (citing *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012)). As Judge Breyer concluded in *Fregosa*, Plaintiffs cannot establish express aiming because "[a]t most [Plaintiffs] ha[ve] alleged facts sufficient to conclude that [Defendant] has targeted website users in general, some of whom happen to live in California. That is not enough." *Id.* (citing *Walden*, 571 U.S. at 285).

In short, Plaintiffs' interactions with the websites at issue are nothing more than "random, isolated, or fortuitous." *See Briskin*, 135 F.4th at 758. As such, the complaint fails to allege that RB intentionally aimed its websites to California so this Court lacks specific jurisdiction.

### b.    Foreseeable Harm

To satisfy the third prong of the *Calder* test, the complaint must allege that RB's conduct via the alleged websites "caused harm that [RB] knew was likely to be suffered in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010). "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Id*. Here, the complaint does not allege that RB knew, or had any reason to know, that the websites would cause harm in California.

Plaintiffs allege in conclusory fashion that RB's website (like all websites) requested the visitors' IP address and that "IP addresses *can* identify the network a device is on and the specific device within that network." (Compl. ¶ 17, emphasis added.) Plaintiffs further claim that "Public IP addresses used for internet-facing devices reveal geographical locations, *such as* country, city, or region, through IP geolocation databases." (*Id*., emphasis added.) Notably, however, Plaintiffs do not contend that RB actually received any geolocation data on the Plaintiffs, nor do they suggest when any such information was received or reviewed. They simply conclude, with no supporting facts, that "Defendant knew that the devices used by Plaintiffs and Class members to access the Websites were located in California." If such conclusory allegations of standard website functionality sufficed to invoke specific jurisdiction, then jurisdiction would exist in every state that any individual accessed a website. That is not the law. *See, e.g.*, *Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL 2142728, at *6 (E.D. Cal. May 26, 2021) ("GM's operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction") (citing *Matus v. Premium Nutraceuticals, LLC*, 715

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

F. App'x 662, 663 (9th Cir. 2018) ("If [defendant] can be haled into California merely on the basis of its universally accessible website, then, under [plaintiff's] proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California.")).

Plaintiffs also allege that the "third-party cookies permitted *the Third Parties* to track and collect data in real time regarding Website visitors' behaviors and communications, including . . . geolocation data—including whether a user is located in California." (Compl. ¶ 3, emphasis added.) However, they do not contend that RB accessed (or had access to) this geolocation data such that it knew any harms would likely result to California residents from accessing the websites.

Accordingly, the complaint does not plausibly establish that RB knew, or had any reason to know, that the alleged websites would cause any harm in California, so this Court lacks specific jurisdiction.

### 2.   Prong Two: There Is No Harm Related to Forum-Related Activities

"The second requirement for specific jurisdiction is that plaintiff's claims 'must arise out of or relate to the defendant's contacts' with the forum State." *Briskin*, 135 F.4th at 760 (citing *Ford Motor Co.*, 592 U.S. at 359.) The complaint does not contain any facts to show that RB had forum-related contacts based on its mere alleged operation of websites, so Plaintiffs' alleged injuries could not occur as a result. As explained, the complaint lacks any facts to suggest that RB intended to have any contact with California residents. Therefore, Plaintiffs also fail to satisfy the second requirement for specific jurisdiction and fail to meet their burden to show that a California court can exercise personal jurisdiction over RB for allegations relating to the universally accessible websites at issue.

### 3.   Prong Three: Fair Play and Substantial Justice

Even if Plaintiffs could establish the first and second prongs, exercising jurisdiction would only be permissible if doing so would be "reasonable" and "not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801–02 (citation omitted). The Court considers the following factors to assess reasonableness, which on balance, demonstrate that exercising personal jurisdiction over RB in California would be unreasonable.

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 984 (9th Cir. 2021) (citation omitted).

As discussed above, Plaintiffs' allegations do not show that RB purposefully directed its activities to California. Therefore, the first factor tips in RB's favor.

The second factor is (at best) neutral. Although the Northern District of California is nearly 3,000 miles from RB's New Jersey headquarters, advances in transportation and communications have slightly eased the burden of transcontinental litigation. Even so, the burdens and costs are not insignificant.

The third factor weighs in RB's favor. Determining whether there are competing sovereign interests "entails an examination of the competing sovereign interests in regulating [RB's] behavior." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). Both Delaware and New Jersey have statutes that regulate online privacy. *See, e.g.*, New Jersey Data Protection Act, N.J. Stat. § 56:8-166.4 *et seq.*; Delaware Personal Data Privacy Act, 6 Del. Code § 12D-101 (2025) *et seq.* Thus, Delaware and New Jersey have an interest in regulating Plaintiffs' claims that RB is invading online privacy rights.

The fourth factor weighs slightly in Plaintiffs' favor. Given the expansive nature of California's consumer protection laws, RB does not dispute that California has at least some interest in adjudicating this case. *Dole Food*, 303 F.3d at 1116.

The fifth factor weighs in RB's favor. The most efficient resolution to this dispute would be to resolve it in either New Jersey or Delaware. The witnesses necessary for resolving this dispute are located in New Jersey. (Petrozza Declaration, ¶ 4.)

The sixth factor weighs in RB's favor because this is a representative action. The primary focus in any class action is not on a particular plaintiff's actions, but is instead on the conduct of the defendant. Plaintiffs need only establish that they visited the websites at issue and that RB's conduct with respect to those websites violated the law. None of RB's conduct relating to those websites occurred in California.

The seventh factor weighs in RB's favor because New Jersey and Delaware provide adequate forums to resolve this dispute.

In sum, exercising personal jurisdiction over RB in California would be unreasonable and offend traditional notions of fair play and substantial justice. The Court should dismiss the case for lack of personal jurisdiction over RB.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

## V.     PLAINTIFFS FAIL TO STATE ANY VIABLE CLAIM FOR RELIEF AGAINST RB

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a legal claim will not suffice to meet the plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Id*. In ruling on a motion to dismiss, a court can consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters properly subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *In re Stac Elec. Sec. Litig*., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### A.     Plaintiffs' CIPA Claims Fail for Four Independent Reasons

Plaintiffs assert two claims under CIPA—(1) alleged violation of Section 638.51 for installing a "trap and trace device" without a court order or consent, and (2) violation of Section 631 based on the theory that RB aided and abetted Third Party wiretapping of Plaintiffs' communications with RB's websites. Plaintiffs' CIPA claims fail individually and collectively for numerous independent reasons.

#### 1.   Plaintiffs' CIPA Claims Are Barred by the Statute of Limitations

Plaintiff's CIPA claims are governed by a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340(a); *Javier v Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023). Plaintiffs allege that "[o]n or about March 29, 2024, Plaintiffs' counsel notified Defendant of its ongoing invasions of privacy and alleged violations of law, as described [in the complaint]." (Compl. at p. 1, n.1.) While no Plaintiff alleges exactly when they visited RB's websites, these visits would have had to occur before March 29, 2024. Despite having knowledge of alleged CIPA violations, Plaintiffs waited more than one year to file their complaint on December 12, 2025. Therefore, even if Plaintiffs' CIPA claims were proper, they are barred by the one-year statute of limitations.

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

### 2. Penal Code Sections 631 and 638.51 Do Not Apply to Online Tracking Technologies

CIPA was originally enacted in 1967 to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 768–69 (2002). The California legislature has amended CIPA numerous times, including after the advent of the Internet Era. When the Legislature has wanted to apply a provision of CIPA to online activities, it has expressly said so.

But that is not the case with Sections 638.51 and 631. The legislature added Section 638.51 to the Penal Code in 2015 to extend CIPA to encompass pen registers and trap and trace devices. *See* A.B. 929, 2015–2016 Reg. Sess. (Cal. 2015). Like the original 1967 law, the 2015 amendments do not contain the words "Internet," "website," or "cookies," despite widespread use of online tracking technologies in 2015.

The plain text of Section 638.51 does not apply to online tracking technologies. A trap and trace device "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.50(c). Trap and trace devices are not illegal per se. A party can install a trap and trace device by "obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Pen. Code § 638.51(a). An order under section 638.52 must specify, among other things, the identity of the person "in whose name is listed the *telephone line* . . ." as well as the "number and, if known, physical location of the *telephone line* to which the pen register or trap and trace device is to be attached . . . ." *Id*. §§ 638.52(d)(1) and (3) (italics added). No mention of a website. Orders authorizing installation of a trap and trace device can only be valid "for a period not to exceed 60 days" unless extended by further court order but again only for 60 more days. *Id*. §§ 638.52(e) and (f). These provisions make sense for a trap and trace device installed to a known telephone line, but not to online tracking software. Section 638.51 also allows a "provider of electronic or wire communication service" to install a trap and trace device if, among other things, "the consent of the user of that service has been obtained . . . ." *Id*. § 638.51(b)(5). If the legislature intended "provider of electronic or wire communication service" was intended to include a website operator, in 2015, the legislature could have and would have used particularized language (like "telephone line").

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

The language of section 631 likewise focuses on telephone technology and does not mention the Internet or websites. *See, e.g.,* Cal. Pen. Code § 631(a) (referring to "telegraph or telephone wire, line, cable, or instrument" and "internal telephone communication system"); § 631(b) (referring to a "public utility," "telephone company," and "telephonic communication systems").

### a. When the Legislature Wants to Extend a Statute to Encompass Online Technologies, It Does So—Expressly

The legislature has amended CIPA to account for technologies that didn't exist when it was enacted in 1967 and adopted other statutes that expressly regulate consumers' online privacy rights. For example, as noted by the California Supreme Court, the California legislature "augmented the statutory scheme [of CIPA] in 1985, 1990, and 1992 'to take account of privacy issues raised by the increased use of cellular and cordless telephones.'" *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (quoting *Flanagan*, 27 Cal.4th at 775). The legislature also added section 632.01 to CIPA in 2017, which punishes anyone who illegally eavesdrops under section 632(a) and then "intentionally discloses or distributes, in any manner, in any forum, including, but not limited to, Internet Web sites and social media . . . the contents of a confidential communication with a health care provider . . . ." *See* Cal. Pen. Code § 632.01. In addition, while not part of CIPA, in 2019, the legislature enacted the Comprehensive Computer Data Access and Fraud Act to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." *See* Cal. Pen. Code § 502(a).

And in 2018, the legislature enacted a comprehensive privacy law that expressly applies to websites or Internet tracking technologies: The California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.*, including as amended by the California Privacy Rights Act of 2020 and its implementing regulations, 11 CCR §§ 7000–7600 (the "CCPA Regulations," and collectively, the "CCPA"). Unlike CIPA, applying the CCPA to the Internet and websites is not a stretch. The CCPA's text contains the word "Internet" 36 times, "website" 48 times, and "advertising" 30 times. *See id.*

The CCPA regulates the use of online tracking technologies of the type alleged by Plaintiffs by, among other things, requiring websites to (1) disclose whether the business shares personal information

MANATT, PHELPS & PHILLIPS, LLP ATTORNEYS AT LAW LOS ANGELES

404533924.11

for cross-context behavioral advertising;[1] (2) disclose categories of third-parties to whom the business discloses personal information, Cal. Civ. Code § 1798.110(c)(4); 11 CCR §§ 7010–7012; (3) offer a link allowing the website visitor to opt-out of such sharing, *id.* at §§ 1798.120, 1798.135; 11 CCR §§ 7026; (4) respond to website visitors' browser signals that can automatically and instantly communicate such opt-out requests, *id.* at § 1798.135(b); 11 CCR § 7025; (5) allow visitors to request a report on all such sharing, *id.* at §§ 1798.115(a)–(b); 11 CCR § 7024; (6) allow visitors to request the deletion of all personal information maintained by the business, *id.* at §§ 1798.105, 1798.130; 11 CCR § 7022; and (7) enter contracts with all third-parties and service providers with which personal information is shared, *id.* at §§ 1798.100(d), 1798.140(ag)(1); 11 CCR §§ 7050–7053.

b.    **Plaintiffs' Attempted Application of Sections 631 and 638.51 to Online Tracking Technologies Conflicts with CCPA**

The CCPA provides California residents with the right to opt-out of the "sale" or "sharing" of their personal information by private businesses through web tracking technologies. Cal. Civ. Code § 1798.120a. The CCPA *does not* require websites to obtain opt-in consent. *See* Cal. Civ. Code §§ 1798.115, 1798.130. In fact, the CCPA's authors decided not to impose an opt-in consent obligation because it (1) is burdensome and moot to consumers who, in seeking a service from a business, necessarily must provide that business with information, and (2) potentially violates a company's First Amendment rights.[2] The CCPA permits businesses to use Internet technologies to collect consumers' personal information so long as the businesses make the required disclosures concerning the information collected, shared, or sold, Cal. Civ. Code § 1798.115, provide the consumer with "the right to opt out of sale or sharing", *id.* § 1798.120, and otherwise comply with the CCPA's obligations.

Plaintiffs' proposed application of CIPA would undermine the CCPA by creating an opt-in consent requirement for businesses to collect and use basic device identifying information through website

---

[1] "Cross-context behavioral advertising" means "the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly branded internet websites, applications, or services, other than the business, distinctly branded internet website, application, or service with which the consumer intentionally interacts." Cal. Civ. Code § 1798.140(k); §§ 1798.115(c), 1798.130(a); 11 CCR § 7013.

[2] Sen. Judiciary Com. Sess. (Mar. 5, 2019) Alistair Mactaggart at 00:20:10 <https://www.senate.ca.gov/media/senate-judiciary-committee-20190305?format=video>.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

DEFENDANT RECKITT BENCKISER LLC'S MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

tracking technologies. This interpretation would make CIPA irreconcilably conflict with the CCPA. As the Ninth Circuit recognizes, "to the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one." *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) (citing *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 490 (9th Cir. 1984)).

Here, the CCPA must control because it was enacted after CIPA and is specifically targeted to regulate the online tracking technologies of the type alleged in the complaint. While the statutory language is clear that it does not apply to Internet conduct, if there were any ambiguity, "CIPA is a criminal statute[, and w]hen courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity applies—even when the statute is being invoked in a civil action." *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (citing *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001). In addition, "[c]ourts are also supposed to narrowly construe civil statutes that impose punitive civil penalties." *Id* (citing *Hale v. Morgan*, 22 Cal. 3d 388, 401). Therefore, were CIPA's language ambiguous, this Court should "adopt a narrower but equally reasonable interpretation of CIPA—one that does not encompass the conduct at issue in this case." *See id.*

### c.    The Court Should Not Apply Sections 631 and 638.51 to Online Tracking Technologies

All of this confirms that Sections 631 and 638.51 were never intended to apply to alleged Internet tracking, but instead are limited to telephones and other person-to-person communications. Accordingly, the Court should dismiss Plaintiffs' claims for violation of Sections 631 and 638.51 with prejudice.

RB is mindful, and the Court likely is aware, that claims alleging CIPA violations in the online context have been proliferating in California state and federal courts for at least the last three years, and numerous courts have permitted these cases to proceed beyond the pleading stage, expressly or impliedly finding that CIPA applies to online communications. Yet no state or federal appellate court has held in a published decision that CIPA applies in this novel context.[3] RB urges the Court to take a fresh look at this

---

[3] Plaintiffs often cite to an unpublished Ninth Circuit memorandum for the proposition that CIPA applies online. *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) This is not binding precedent. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("[N]on-binding memorandum dispositions . . . are 'not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.'") (quoting U.S. Ct. of App. 9th Cir. R. 36-3(a)).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

legal issue to avoid potentially lengthy and messy litigation over claims that it must stretch to apply to the conduct at issue in this case.

### 3. Plaintiffs' Section 638.51 Claims Fail Because They Allege No "Trap and Trace Device" or Pen Register

Section 638.51 prohibits installing or using a pen register or trap and trace device without a court order. Cal. Penal Code § 638.51(a). Pen registers and trap and trace devices record or capture "dialing, routing, addressing, or signaling information" "*but not the contents of a communication.*" Cal. Penal Code § 638.50(b), (c) (italics added). (*See also* Compl. ¶ 195.) In other words, pen registers and trap and trace devices "are tools which provide information about the 'who,' 'when,' and 'where' of communications— but not the 'what.'" *Kishnani*, 2025 WL 1745726, at *4 (quoting *Price v. Headspace, Inc.*, No. 24STCV19921, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025) (sustaining demurrer to section 638.51 claim based on website's alleged use of the TikTok pixel)).

Plaintiffs' Section 638.51 claims hinge on the unworkable theory that the "cookies and corresponding software code" constitute a trap and trace device. (*Id.* ¶ 196.) Under the plain text of Section 638.51, the "cookies and corresponding software code" cannot be a trap and trace device because they are alleged to have captured the contents of Plaintiffs' communications. (*Id.* ¶¶ 39–96 ["The Websites Cause the Interception of the Contents of Communications"]; ¶¶ 184–185.) Because Plaintiffs allege that the "cookies and corresponding software code" captured the contents of communications, the "cookies and corresponding software code" cannot be a pen register or trap and trace device. The Court should dismiss Plaintiffs' Section 638.51 claims with prejudice.

### 4. Plaintiffs' Section 631 Claims Fail Because They Do Not Allege Facts That Establish that RB Aided and Abetted Any CIPA Violation

California Penal Code section 631(a) imposes liability under "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978); Cal. Pen. Code § 631(a). A fourth basis for liability exists for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or

Manatt, Phelps & Phillips, LLP
Attorneys at Law
Los Angeles

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

cause to be done any of the acts or things mentioned above . . . ." Cal. Pen. Code § 631(a). Importantly, a party to a conversation cannot be held directly liable for wiretapping its own conversation, so aiding and abetting is Plaintiffs' only potential theory for liability. *See, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).

Liability may be imposed on one who aids and abets the commission of an intentional tort if the person: (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act, or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person. *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343–44 (2014). Defendant must have actual knowledge of the "specific primary wrong" and give substantial assistance to the wrongful conduct. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005); *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 654 (2018). An aider and abettor must have acted with the intent of facilitating the commission of the tort, making a conscious decision to participate in the tortious activity. *Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 104 Cal. App. 5th 1034, 1059 (2024). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (citations omitted).

Here, Plaintiffs can only be proceeding against RB under an aiding and abetting theory of liability. Their allegations make it clear that the Third Parties are doing the alleged wiretapping. (*See, e.g.*, Compl. ¶ 184 ("By their cookies and corresponding software code, the Third Parties willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiffs and Class members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California."); ¶ 185 ("The Private Communications of Plaintiffs and Class members, on the one hand, and Defendant, on the other, that the Third Parties automatically intercepted . . . ."); ¶ 186 ("The Third Parties used or attempted to use the Private Communications automatically intercepted by their cookie tracking technologies for their own purposes").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

Plaintiffs' allegations fail to show that RB knew that the Third Parties were violating CIPA, let alone that RB substantially assisted in commission of any purported violation(s). Instead, they assert broad conclusory allegations that RB "configured" its websites to cause "Plaintiffs and Class members' browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications to Third Parties", and as a result, RB "willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs and Class members using the Third Parties' cookies and to accomplish the wrongful conduct alleged [in the complaint]." (*See* Compl. ¶¶ 183, 173–191.) These conclusory allegations do not satisfy the *mens rea* requirement for aiding and abetting. *See, e.g.*, *Valenzuela*, 2024 WL 1336959, at *4. Plaintiffs' Section 631 claims fail for this additional reason.[4]

**B.      Plaintiffs' Common Law Fraud Claims Do Not Satisfy Rule 9(b)**

Common law fraud in California requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). A state law fraud claim pursued in federal court must also satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement by pleading "the who, what, when, where, and how of the misconduct alleged." *Id*. at 1126. One of the purposes of the specificity required of Rule 9(b) is to "provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs." *Id*. at 1125.

Plaintiffs fail to plead the "when . . . of the misconduct alleged" and therefore fail to provide RB with adequate notice to defend against the claims. *Id*. at 1126. Plaintiffs allege only that they visited some of the alleged websites at some unspecified point or points in the last four years, and that, despite Plaintiffs opting out of certain cookies, "Defendant nonetheless caused cookies . . . to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and transmitted to the Third Parties along with user data." (Compl. ¶¶ 3, 103, 113, 123, 133.)

---

[4] There is a fundamental contradiction between Plaintiffs' two CIPA claims. To qualify as a trap and trace device, the Third Party tracking software cannot record the contents of a communication. Yet claims under Section 631 require the Third Parties to read or attempt to read the contents of communications while in transit. Plaintiffs seek to paper over this contradiction by simply listing all the tracking software allegedly embedded on RB's websites without describing which software is reading the contents of communications while in transit and which is simply collecting routing or signaling information. That lack of specificity provides an additional reason why the Court should dismiss the CIPA claims.

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

Based on these conclusory allegations, RB cannot determine what specific representations regarding cookies were made on the various websites on the specific dates that each individual Plaintiff visited those websites or determine how the websites were using any cookies placed on users' devices on those specific dates. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (concluding that plaintiff did not satisfy Rule 9(b) because he failed to plead "when he was exposed to" the television advertisements at issue or to "specify . . . when [an allegedly fraudulent] statement was made"). Given that the statute of limitations for fraud is three years [Cal. Code Civ. Proc. § 338(d)], alleging when the alleged misrepresentation will disclose whether, like the CIPA claims, Plaintiffs' fraud claims are time-barred.

In addition, fraud is not actionable without "resulting damage." *See Kearns*, 567 F.3d at 1126. As set forth above, the complaint's conclusory allegations do not establish any concrete injury, and also fail to explain when any harm occurred or the nature of the alleged harm. No Plaintiff alleges if and when they visited any of the websites after disabling cookies, nor do they explain how any harm resulted from any such visit. For example, they do not allege which particular tracking technology was involved in their communications with one of RB's websites, what they allegedly communicated, and how the tracking caused them to suffer harm.

Because Plaintiffs' allegations do not satisfy Rule 9(b), the Court should dismiss Plaintiffs' common law fraud, deceit, and misrepresentation claims.

### C.      Plaintiffs' Common Law Invasion of Privacy Claims Fail

"To establish an invasion of privacy claim, a plaintiff must demonstrate: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994)). "The California Constitution and the common law both set a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, 2013 No. CV 13-01743 CRB, WL 3855589, at *6 (N.D. Cal. July 24, 2013). Plaintiffs do not establish any of the elements and cannot clear the high bar for their invasion of privacy claims.

As discussed, Plaintiffs fail to identify a legally protected privacy interest. The only information is the alleged disclosure of Plaintiffs' browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

404533924.11

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

URLs, session information, user identifiers, and/or geolocation data. (Compl. ¶ 3.) Courts, however, consistently have held that disclosure of such information is not enough to support an invasion of privacy claim. *See, e.g.*, *Cabral v. Supple, LLC*, 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012) ("The disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy"); *Fredenberg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2004) ("[a] person's general location is not the type of core value, informational privacy explicated in *Hill*"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Accordingly, this threshold element is not satisfied.

Even if Plaintiffs had a reasonable expectation of privacy in the alleged information, they fail to satisfy the "high bar" of demonstrating RB's conduct was "highly offensive." To satisfy this element, they must plead an "egregious breach of social norms." *In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1038. They cannot meet this high standard because the collection of this type of behavioral information reflects "routine commercial behavior" that courts regularly accept. *See Hammerling v. Google*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("Courts in this district have held that data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (holding that routine commercial behavior is not an egregious breach of social norms); *Low*, 900 F. Supp. 2d at 1025. The Court should dismiss Plaintiffs' claims for invasion of privacy with prejudice.[5]

### D.    Plaintiffs' Intrusion Upon Seclusion Claims Fail

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) that the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024).

---

[5] Notably, Plaintiffs allege that RB has "intruded upon the following legally protected privacy interests of Plaintiffs . . . Cal. Penal Code § 484(a), which prohibits the knowing theft or defrauding of property 'by any false or fraudulent representation or pretense . . . .'" (Compl. ¶ 152.) Dismissal is independently warranted under Rule 9(b) because "[i]n cases 'where fraud is not an essential element of a claim,' any 'allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11

Plaintiffs do not meet either element.

As a threshold matter, the alleged communications involved in this case occurred on and were made to RB's websites. RB cannot "intrude" on communications made to its own websites.

And, as explained above, Plaintiffs fail to allege that they have a reasonable expectation of privacy in the information allegedly collected. Instead, courts routinely hold that disclosure of such information does not support a privacy claim. *See Cabral*, 2012 WL 12895825, at *3; *Fredenberg*, 119 Cal. App. 4th at 423; *Low*, 900 F. Supp. 2d at 1025.

In addition, even if Plaintiffs had a reasonable expectation of privacy in the alleged information, they fail to allege that any intrusion occurred in a highly offensive manner. Instead, the collection of this type of behavioral information reflects "routine commercial behavior" that courts regularly accept. *Hammerling*, 615 F. Supp. 3d at 1090; *Folgelstrom*, 195 Cal. App. 4th at 992; *Low*, 900 F. Supp. 2d at 1025. Accordingly, Plaintiffs' claims for intrusion upon seclusion should be dismissed with prejudice.

### E.   Plaintiffs' Unjust Enrichment Claims Fail with their Defective Fraud Claim

In the Ninth Circuit, unjust enrichment claims are permitted when "a claim [is brought] that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (cleaned up). As discussed above, Plaintiffs fail to adequately plead their fraud claims under Rule 9(b), so they have not "establish[ed] the requisite relationship" between their fraud and unjust enrichment claims by alleging RB "has been unjustly conferred a benefit through . . . fraud." *See B.K. v. Desert Care Network*, No. 23-CV-05021, 2024 WL 1343305, at *11 (C.D. Cal. Feb. 1, 2024). They also do not plead with requisite specificity what, if any, benefit was conferred to RB. Therefore, this Court should dismiss Plaintiffs' unjust enrichment claims. *See Hammerling*, 615 F. Supp. 3d at 1096–97 (dismissing unjust enrichment claim where plaintiffs failed to plead fraud with particularity); *B.K.*, 2024 WL 1343305, at *11 (same)

### F.   Plaintiffs' Fail to State a Claim for Recovery of Punitive Damages

To recover punitive damages, Plaintiffs must plead and prove " by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). However, "a company simply cannot commit willful and malicious conduct—only an individual can." *Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *6–7 (N.D. Cal. May 8, 2019) (citation

MANATT, PHELPS & PHILLIPS, LLP ATTORNEYS AT LAW LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S MOTION TO DISMISS COMPLAINT CASE NO. 5-25-CV-10643-BLF

404533924.11

omitted); *see* Cal. Civ. Code § 3294(b) (providing for imposition of punitive damages against a corporation only upon a showing of the requisite mental state of an officer, director or managing agent); *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000) (discussing the requirements for imposing punitive damages upon a corporate defendant).

Plaintiffs do not allege any conduct by any officer, director, or managing agent of RB—let alone any conduct sufficient to support imposing punitive damages against RB. (*See* Compl. ¶¶ 161, 171.) *See, e.g.*, *Xerox Corp. v. Far W. Graphics, Inc.*, No. C-03-4059-JFPVT, 2004 WL 2271587, at *2 (N.D. Cal. Oct. 6, 2004) (dismissing claim for punitive damages because plaintiff "fails to allege any conduct by an officer, director or managing agent . . . sufficient to support the imposition of punitive damages."). The Court should dismiss Plaintiffs' prayer for punitive damages with prejudice

## VI. <u>THE COURT SHOULD STRIKE REFERENCES TO WEBSITES THAT PLAINTIFFS NEVER VISITED</u>

Federal Rule of Civil Procedure 12(f) allows striking "any redundant, immaterial, impertinent, or scandalous matter." Matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded" and is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (citation omitted).

Plaintiffs spend 78 pages alleging that RB's conduct relates to certain websites, namely, durexusa.com, k-y.com, enfamil.com, airwick.us, biofreeze.com, clearasil.us; finishdishwashing.com; lysol.com; mucinex.com; veet.us; reckitt.com; woolite.us; and schiffvitamins.com. (*See generally* Compl.) However, Plaintiffs never allege that they ever visited airwick.us, biofreeze.com, clearasil.us; finishdishwashing.com; mucinex.com; veet.us; woolite.us; or schiffvitamins.com. Any discussion or allegations relating to those websites would not be material to this case and should be stricken.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint with prejudice.

Dated: February 20, 2026          MANATT, PHELPS & PHILLIPS, LLP

By: */s  Brad W. Seiling*
Attorneys for Defendant
RECKITT BENCKISER, LLC

MANATT,
PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT RECKITT BENCKISER LLC'S
MOTION TO DISMISS COMPLAINT
CASE NO. 5-25-CV-10643-BLF

404533924.11