**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINAMARIE BARRALES, DAVID FRANKLE, STACY PENNING, and MARIA SANTACRUZ, individually, on behalf of themselves, the general public, and those similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>RECKITT BENCKISER LLC,<br><br>                    Defendant. | CASE NO. 5:25-cv-10643-BLF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE PORTIONS OF COMPLAINT**<br><br>Hearing Date:      June 25, 2026<br>Hearing Time:      9:00 a.m.<br>Hearing Location:  Courtroom 2 |

# TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................................1

II.     FACTUAL BACKGROUND ......................................................................................2

    A.      Defendant Gave Plaintiffs a False Choice to Opt-Out of Website Cookies. .......2

    B.      Defendant Intentionally Designed the Websites and Cookie Banners. ...............4

    C.      Defendant and Third Parties Profited From Collecting Plaintiffs' Data..............4

III.    ARGUMENT ...............................................................................................................5

    A.      Plaintiffs Have Article III Standing. ....................................................................5

        1.      Plaintiffs have legally protected privacy interests. ................................5

        2.      Plaintiffs suffered concrete injuries. ......................................................7

        3.      Despite Defendant's declaration, Plaintiff Barrales has standing............9

    B.      This Court Has Specific Jurisdiction Over Defendant......................................10

        1.      Defendant's activities were expressly aimed at California...................10

        2.      Defendant foresaw the harms Plaintiffs suffered.................................12

        3.      Defendant cannot claim California jurisdiction is unreasonable. ..........13

    C.      Plaintiffs Sufficiently Pled CIPA Claims. .......................................................14

        1.      The statute of limitations does not bar Plaintiffs' claims. ....................14

        2.      CIPA applies to online tracking technologies.......................................14

        3.      Defendant's conduct involves a process under section 638.51..............16

        4.      Defendant's conduct violated section 631. ...........................................17

    D.      Plaintiffs' Pleadings Satisfy Rule 9(b)..............................................................18

    E.      Plaintiffs Properly Pled Invasion of Privacy and Intrusion Upon Seclusion.....19

    F.      Plaintiffs Sufficiently Pled Unjust Enrichment Claims. ...................................21

    G.      Plaintiffs Sufficiently Pled Punitive Damages.................................................22

    H.      Defendant's Motion to Strike is Baseless. .......................................................23

IV.     CONCLUSION..........................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Blake v. Dierdorff*,
856 F.2d 1365 (9th Cir. 1988) ...................................................................................22

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ............................................................... 14, 15, 16, 17

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021) .........24

*Brown v. Google*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ......................................................................11

*Brown v. Natures Path Foods, Inc.*,
No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ............23

*Bruton v. Gerber Prod. Co.*,
No. 15-15174, 2017 U.S. App. LEXIS 12833 (9th Cir. Jul. 17, 2017) ..............................25

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ............................................................................................. 16, 17

*Calder v. Jones*,
465 U.S. 783 (1984) ............................................................................................. 14, 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .....................................................................11

*Crowder v. Shade Store, LLC*,
No. 23-cv-02331-NC, 2024 U.S. Dist. LEXIS 114470 (N.D. Cal. June 26, 2024) .............26

*Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*,
956 F.3d 589 (9th Cir. 2020) ...........................................................................passim

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ...................................................................................27

*Durnford v. MusclePharm Corp.*,
907 F.3d 595 (9th Cir. 2018) ...................................................................................18

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351, 141 S. Ct. 1017 (2021) ................................................................. 14, 17

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) .. 12, 25

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ......passim

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ............................................................... 20, 21

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................24

*Hamzeh v. Pharmavite LLC*,
No. 24-cv-00472-HSG, 2025 U.S. Dist. LEXIS 34941 (N.D. Cal. Feb. 26, 2025) .............27

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ............................................................................................24

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........................................................................................... 10, 25

*Huynh v. Chase Manhattan Bank*,
  465 F.3d 992 (9th Cir. 2006) ..................................................................................................... 18

*In re Clorox Consumer Litig.*,
  894 F.Supp.2d 1224 (N.D.Cal. 2012) ........................................................................................ 23

*In re Facebook, Inc.*,
  402 F. Supp. 3d 767 (N. D. Cal. 2019) ...................................................................................... 25

*In re Google Inc.*,
  806 F.3d 125 (3d Cir. 2015) ....................................................................................................... 11

*In re Google Location History Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ..................................................................................... 11

*In re Meta Pixel Tax Filing Cases*,
  793 F. Supp. 3d 1147 (N.D. Cal. 2025) ..................................................................................... 20

*Jager v. Davol, Inc.*,
  No. 16-cv-1424-JGB, 2016 U.S. Dist. LEXIS 188821 (C.D. Cal. Oct. 20, 2016) .............. 26

*James v. Walt Disney Co.*,
  701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................................................................................... 21

*Javier v. Assurance IQ, LLC*,
  No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ............................... 18

*Jayone Foods, Inc. v. Aekyung Indus. Co. Ltd.*,
  31 Cal. App. 5th 543 (2019) ...................................................................................................... 15

*Katz v. United States*,
  389 U.S. 347 (1967) .................................................................................................................... 10

*Katz-Lacabe v. Oracle, Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. April 6, 2023) ......................................................................... 24

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ............................................................................... 12, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..................................................................................................... 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. Jun. 24, 2025) .......................... 12, 13

*L.B. v. LinkedIn Corp.*,
  No. 5:24-cv-07399-EJD, 2025 U.S. Dist. LEXIS 193980 (N.D. Cal. Sept. 30, 2025) ........ 11

*Mavrix Photo, Inc., v. Brand Techs. Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ................................................................................................... 17

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) ....................................................................................... 10

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
  No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378
  (N.D. Cal. Dec. 12, 2024) ............................................................................................. 19, 20, 21

*Ocasio v. United States*,
  578 U.S. 282 (2016) .................................................................................................................... 19

*Omni King, Inc. v. Accelerant Specialty Ins. Co.*,
  No. 23-cv-0048-SSS-KKx, 2023 U.S. Dist. LEXIS 87708 (C.D. Cal. Apr. 19, 2023) ....... 26

*Popa v. Microsoft Corporation*,
  153 F.4th 784 (9th Cir. 2025) .................................................................................................... 12

*Rabin v. Google LLC*,
  725 F. Supp. 3d 1028 (N.D. Cal. Mar. 26, 2024) .................................................................. 18

*Residence Mut. Ins. Co. v. Air Vent*,
  CVRI2103307, 2022 Cal. Super. LEXIS 98962 (Dec. 12, 2022) ........................................ 15

*Rodriguez v. Autotrader.com, Inc.*,
  No. 2:24-CV 08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. April 4, 2025) ..................... 22

*Rodriguez v. Google* (*Rodriguez II*),
  No. 20-cv-04688, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) ........................... 23

*Rodriguez v. Google LLC* (*Rodriguez I*),
  No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ............... 25

*Rodriguez v. Google LLC (Rodriguez III)*,
  No. 20-cv-04688-RS, 2025 U.S. Dist. LEXIS 3238 (N.D. Cal. Jan. 7, 2025) ..................... 11

*Ruhnke v. Skinmedica, Inc.*,
  No. 14-cv-0420-DOC, 2014 U.S. Dist. LEXIS 207235, 2014 WL 12577172
  (C.D. Cal. Sept. 5, 2014) ..................................................................................................... 26

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*,
  700 F. Supp. 3d 928 (S.D. Cal. 2023) ................................................................................. 26

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ............................................................................................. 27

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................... 15

*Shah v. Capital One Fin. Corp.*,
  768 F. Supp. 3d. 1033 (N.D. Cal. Mar. 3, 2025) ................................................................ 26

*Shah v. Fandom*,
  754 F. Supp. 3d 924 (N.D. Cal. 2024) ..................................................................... 18, 19, 20

*Shanahan v. IXL Learning, Inc.*,
  No. 24-v-cv-02724-RFL, 2024 U.S. Dist. LEXIS 203111 (N.D. Cal. Nov. 1, 2024) ......... 13

*Thomas v. Papa Johns Int'l, Inc.*,
  No. 22-cv-2012-DMS, 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) ............... 11

*TransUnion, LLC v. Ramirez*,
  594 U.S. 413 (2021) ................................................................................................... 9, 11, 12

*Turner v. Google LLC*,
  737 F. Supp. 3d 869 (N.D. Cal. 2024) ................................................................................ 18

*United States v. Anderson*,
  46 F.4th 1000 (9th Cir. 2022) .............................................................................................. 19

*United States v. Jones*,
  565 U.S. 400 (2012) ............................................................................................................. 24

*United States v. McGee*,
  993 F.2d 184 (9th Cir. 1993) ............................................................................................... 18

*Van Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ............................................................................................... 18

*Walsh v. Dollar Tree Stores, Inc.*,
  No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N. D. Cal. Oct. 16, 2025) .......... 10

*Whitaker v. URBN US Retail LLC*,
  No. 21-cv-01480-BLF, 2022 U.S. Dist. LEXIS 16006 (N.D. Cal., Jan. 28, 2022) ............. 14

OPPOSITION TO MOTION TO DISMISS AND STRIKE – CASE NO. 5:25-CV-10643-BLF

*Yahoo! Inc. v. La Ligue Contre le Racisme*,
  433 F.3d 1199 (9th Cir. 2006) ..................................................................................... 14, 16

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) .............................................................................................. 13

**Statutes**

Cal. Civ. Code § 1798.100............................................................................................................ 19

Cal. Penal Code § 630.................................................................................................................... 6

Cal. Penal Code § 631.............................................................................................................. 18, 21

Cal. Penal Code § 631(a) ............................................................................................................. 21

Cal. Penal Code § 638.50(b) ...................................................................................................... 20

Cal. Penal Code § 638.51 .................................................................................................. 18, 20, 21

Cal. Penal Code § 638.51(b) ...................................................................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 18

Fed. R. Civ. P. 9(b) .............................................................................................................. passim

Fed. R. Evid. 201(b)..................................................................................................................... 14

Judge's Standing Order, IV.G..................................................................................................... 13

## I.   INTRODUCTION

Contrary to what Defendant's Motion suggests, this case is not about Defendant's failure to obtain Plaintiffs' consent to "basic online tracking technologies;" it is about something much more sinister and offensive: Defendant affirmatively and prominently represented that Plaintiffs could choose to protect their data from third parties, and that Defendant would honor that choice, but then Defendant violated that promise by installing tracking cookies anyway so that third parties could surreptitiously take Plaintiffs' data while they used Defendant's Websites. By presenting Plaintiffs with a choice, and then, unilaterally and without disclosure, refusing to honor their choice, Defendant lulled Plaintiffs into a false sense of security while depriving them of the control they believed they had over their own information. Given this context, perhaps it is no surprise that Defendant refuses to directly engage with Plaintiffs' allegations and instead seeks dismissal based on a series of tired technicalities that this Court has rejected in similar cases.

First, Defendant argues that Plaintiffs lack legally protected privacy interests in their information, relying on cases that did not involve opt-out cookie banners. Tellingly, Defendant neglects to mention that, even if Plaintiffs had no prior privacy expectations, Defendant created those expectations by presenting Plaintiffs with the choice to protect their information. Next, Defendant claims that Plaintiffs suffered no concrete injuries because it was not highly offensive to secretly gather and transmit aggregated information about them, after agreeing not to do so, while they browsed Defendant's Websites (for, among other things, information about contraception and sexually transmitted disease protection). The offensiveness of Defendant's conduct stems from not only the fact that it directly *lied* to Plaintiffs about the privacy of their information, but that it did so about deeply intimate, personal, and embarrassing information over which reasonable people have a heightened expectation of privacy.

Second, Defendant asserts that it is not subject to this Court's jurisdiction, supposedly because Defendant did not directly target California consumers and could not reasonably foresee the harm it caused in California. But Defendant does not deny that it engaged in business in California, intended to serve California consumers, and obtained California users' locations as

they visited the Websites. If Defendant's Websites were truly not directed at California, it could simply, as many websites do, geofence or geoblock California users. Moreover, Defendant ignores that its own Privacy Policy and cookie banner demonstrates that it reasonably foresaw that its Websites could aggregate and disseminate information that users might want to protect. Defendant cannot have it both ways; operate nationally and allow California users to interact with its Websites under false privacy pretenses and then feign surprise when called to account for violating the privacy of California victims.

Third, Defendant asks this Court to revisit prior holdings interpreting California's Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA"), in an attempt to drastically limit its application to technologies from the last century and to create other substantial gaps in its protections. It also ignores Plaintiffs' allegations regarding Defendant's culpability in causing Plaintiffs' information to be transmitted to third parties.

Finally, Defendant hangs its hat on Rule 9(b), arguing that Plaintiffs have not pled timing and damages with sufficient specificity to assert claims for fraud, unjust enrichment, and punitive damages. First, Plaintiffs may plead alternative damages theories without meeting a heightened pleading standard. Second, if Plaintiffs' Complaint lacks specificity it is because Defendant deliberately muddied the waters by adjusting cookie banner settings after receiving notice from Plaintiffs of its violations. Third, the scope and specific mechanisms by which Defendant collected and transmitted Plaintiffs' information are concealed both by their technical nature and Defendant's false representations that it was not engaging in this conduct. Given this context, it is particularly unreasonable to require Plaintiffs to identify specific Website configurations on specific dates to preemptively plead against a statute of limitations defense and they should not be penalized at the pleadings stage for Defendant's pattern of obfuscation.

## II. FACTUAL BACKGROUND

### A. Defendant Gave Plaintiffs a False Choice to Opt-Out of Website Cookies.

Like many companies, Defendant designed its Websites to include resources and programming scripts from third parties that enable them to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other

similar tracking technologies on users' browsers and devices to transmit cookies along with user data. ECF No. 1 ¶ 2. Through a popup cookie consent banner displayed to users when they visited the Websites, Defendant offered them a choice to browse *without* placing these cookies and other tracking technologies on their browsers, allowing them to use the Websites without tracking or targeting by third-party data brokers or advertisers. *Id*. ¶¶ 1–2, 29. Defendant's cookie banners stated that the Websites "uses cookies for personalized advertising and sharing with third parties. If you agree with this use, click **Allow All**. To opt out, click **Disable All**. To allow some cookies and deny others, click **Manage Preferences**." *Id*. ¶ 29 (emphasis original). If visited, the "Privacy Policy" discloses the types of cookies used by the Websites, as well as a description of the types of data collected using those cookies. *Id*. ¶¶ 27–28.

The representation that Plaintiffs could "Disable All" cookies was false. When users clicked "Disable All" cookies, Defendant nevertheless permitted Third Parties to place on users' devices and browsers the very cookies they had disabled. *Id*. ¶¶ 32–35. Once placed, these cookies allow user data to be transmitted to third parties in the manner and for the purposes alleged in the Complaint and as described below, including for purposes Defendant described in its Privacy Policy. *Id*. ¶¶ 35–38. Even after users elect to "Disable" cookies, Defendant surreptitiously enabled numerous Third Parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), ByteDance Ltd. (TikTok), Snap Inc. (SnapChat), and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Websites. *Id*. ¶¶ 43–85, 87–96. The cookies Defendant permits Third Parties to place on users' devices and browsers—despite users' express rejection and despite Defendant's express representation to the contrary—track and collect data in real time regarding users' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. *Id*.

Plaintiffs allege that they accessed and browsed the Websites on one or more occasions. *Id*. ¶¶ 106, 113–115, 123–125, 133–134. Even before the popup cookie banner appeared on their

screens, Defendant programmed the Websites to enable Third Parties to place cookies and tracking technologies on Plaintiffs' devices and transmit their data without their knowledge. *Id*. ¶¶ 109, 119, 129, 138. After Plaintiffs clicked "Disable All" cookies, they browsed the Websites in reliance on the promises and representations Defendant made in the cookie banners. *Id*. ¶¶ 107–108, 110, 117–118, 120, 126–128, 130, 135–137, 139. Despite Plaintiffs' clear declination of cookies, Defendant ignored their privacy choices and actively assisted Third Parties in tracking and collecting Plaintiffs' data as they browsed the Websites. *Id*. ¶¶ 36–37, 110, 120, 130, 139.

**B.      Defendant Intentionally Designed the Websites and Cookie Banners.**

Defendant voluntarily—i.e. intentionally—installed and integrated "third-party resources" from Third Parties into the Websites' programming via software code that caused placement of the cookies. *Id*. ¶¶ 2, 19, 24, 26, 74, 83, 86. Thus, when users visit the Websites, both first-party cookies and third-party cookies are placed on their devices and/or transmitted to Defendant and Third Parties. *Id*. ¶¶ 20, 26. Defendant controls the software code of the Websites—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to Third Parties. *Id.* During the time period in which Plaintiffs accessed the Websites, Defendant permitted Third Parties to place, store, and/or transmit third-party tracking cookies on users' devices and browsers. *Id*. ¶ 3, 23.

The Websites allow users to browse and purchase Defendant's products and services and, as they did so (e.g., by entering data into forms, clicking on links, and making selections), communicate user data to Defendant. *Id*. ¶¶ 25, 41–46. The third-party cookies stored on and/or loaded from users' devices when they interact with the Websites are transmitted to Third Parties, enabling them to, in real time, surreptitiously track and collect Website users' data. *Id*. ¶¶ 42, 46. Third-party cookies include an identifier that allows them to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id*. ¶¶ 3, 20, 22–23.

**C.      Defendant and Third Parties Profited From Collecting Plaintiffs' Data.**

The data that Defendant's Websites collect and transmit via cookies is both personal to

- 4 -

users and valuable to Defendant and Third Parties. *Id*. ¶¶ 98–101. It allows Defendant to optimize its Websites, marketing, and other commercial operations to effectively target existing and potential consumers. *Id*. ¶¶ 98–99. It also allows Third Parties to do the same. *Id*. ¶ 100. Plaintiffs specifically rejected Defendant's, and Third Parties', attempts to access and use this information but Defendant did it anyway, robbing them of the choices they made about their own data. *Id*. ¶¶ 101–102.

## III.    ARGUMENT

### A.    Plaintiffs Have Article III Standing.

Defendant argues Plaintiffs lack Article III standing, but they clearly meet all three required elements. First, Plaintiffs alleged a concrete invasion of a legally protected interest in their right to privacy, a right that has been traditionally recognized at common law. *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("close historical or common-law analogue"); *Davis v. Facebook, Inc. ("In re Facebook Inc. Internet Tracking Litig.")*, 956 F.3d 589, 603 (9th Cir. 2020) (holding that "[v]iolations of the right to privacy have long been actionable at common law," and "encompass the individual's control of information concerning his or her person."). Second, Plaintiffs' injuries are fairly traceable to Defendant's installation of tracking cookies on Plaintiffs' devices, despite Plaintiffs' direct request (and Defendant's direct promise) not to be tracked. Third, these injuries can be redressed by this Court with an award of money damages. Defendant's arguments do not detract from any of these three elements.

### 1.    Plaintiffs have legally protected privacy interests.

Contrary to Defendant's assertions, it did not simply transmit Plaintiffs' anonymized data. ECF. No. 11 at 15. After creating an expectation of privacy on its Websites with its explicit promises that it would *not* allow third parties to track or collect Plaintiffs' information, Defendant then surreptitiously enabled Third Parties to intercept, collect, and use Plaintiffs' *individualized* data—including likes, interests, and habits—and connect them over multiple visits, associating each Plaintiff with a "unique ID" "that is used to track a specific Website user across different websites over time." ECF No. 1 ¶¶ 23, 52, 89. This is more than just an abstract statutory violation. ECF No. 11 at 13. Courts have flatly rejected Defendant's argument and held

that "'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data,' can be quite sensitive; loss in the privacy of such data supports Article III standing." *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N. D. Cal. Oct. 16, 2025) (citing *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *6 (N.D. Cal. July 14, 2025)). Indeed, the Ninth Circuit recognizes standing where defendants "reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (clarifying that a consumer has an expectation of privacy in data that is aggregated and collected against the user's wishes.)

Defendant's contention that Plaintiffs had no "legally protectable privacy interest based on the nature of the information at issue" because Plaintiffs' information was "not embarrassing, invasive, or otherwise private" and its transmittal was akin to "a store clerk's observing shoppers" is especially misguided. ECF No. 11 at 13 (citing *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)). In *Mikulsky*, the plaintiffs alleged the capture of only record information. 682 F. Supp. 3d at 860. Here, Defendant's settings allowed user data about searches involving sex and infant health to be transmitted to social media websites and advertisers. ECF No. 1 ¶¶ 43–44. Consumers may turn to Websites, which they presume they can access from the privacy of their personal electronic devices, for information and products involving sex, diet, and healthcare specifically to avoid being observed perusing embarrassing, intrusive, or private subjects, rendering Defendant's transmittal of Plaintiffs' information even more egregious than clerk observations in a brick-and-mortar store. *See e.g., Katz v. United States*, 389 U.S. 347, 351 (1967) ("[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected"); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 41 (1994) (recognizing "autonomy privacy—an interest in freedom from observation in performing a function recognized by social norms as private. . . [and] informational privacy—an interest in

limiting disclosure of confidential information about bodily condition."); *L.B. v. LinkedIn Corp.*, No. 5:24-cv-07399-EJD, 2025 U.S. Dist. LEXIS 193980, at *17 (N.D. Cal. Sept. 30, 2025) (declining to dismiss a complaint because "[e]ven with LinkedIn's disclosures, Plaintiffs could still have a reasonable expectation of privacy in certain types of data—i.e., medical-related information.").

What's more, Defendant completely overlooks its ***own representation*** that users could browse the Website without being tracked—i.e., they could "Disable All" cookies. That fact is outcome-determinative since "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012-DMS, 2024 U.S. Dist. LEXIS 84019, at *5 (S.D. Cal. May 8, 2024) (citing *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601–03). *See also Rodriguez v. Google LLC (Rodriguez III)*, 772 F. Supp. 3d 1093, 1104 (N.D. Cal. 2025) ("*Rodriguez III*") (denying Google's motion for summary judgment because representing that it would *not* save data and then saving it created a disputed issue of material fact on whether there was a reasonable expectation of privacy); *Brown v. Google*, 685 F. Supp. 3d 909, 937–41 (N.D. Cal. 2023) (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC,* 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs "had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"); *In re Google Inc.*, 806 F.3d 125, 151 (3d Cir. 2015) (holding that users maintained a reasonable expectation of privacy where "Google not only contravened the cookie blockers—it held itself out as respecting the cookie blockers.").

### 2.    Plaintiffs suffered concrete injuries.

The injuries Plaintiffs suffered as a result of Defendant's actions were, likewise, real and have a "close historical or common-law analogue." *TransUnion*, 594 U.S. at 424. In addition to

the privacy interests, Plaintiffs relied on Defendant's affirmative misrepresentations about privacy. Reliance on a false promise is an injury courts consistently find "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). *See also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26. Here, Defendant did not simply injure Plaintiffs by collecting and disclosing their information, it injured them by breaking its promise.

Allegations that a defendant "deprived [Plaintiffs' of] control of personal information regarding [their] digital activity and profile are [also] enough to show a concrete injury to his right to privacy and, subsequently, Article III standing." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *15 (N.D. Cal. Aug. 29, 2025). Here, Defendant caused tracking beyond its own website and for the benefit of Third Parties—who build profiles, as in *In re Facebook Inc. Internet Tracking Litig.*—while creating an expectation of privacy by allowing Plaintiffs to opt-out of sharing their data, but then not honoring its promises. ECF No. 1 ¶¶ 3, 20, 22–23, 32–38, 42–85, 87–96. In fact, the cases Defendant relies on actually reinforce Plaintiffs' concrete injuries. *See* ECF No. 11 at 13–15 (citing *Popa v. Microsoft Corporation*, 153 F.4th 784, 788–790 (9th Cir. 2025); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3–4 (N.D. Cal. Jun. 24, 2025); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025)). *Popa* held that the plaintiff had not pled an injury-in-fact where he had not established how "session replay technology" caused a harm that was "highly offensive," but session replay software was limited to collecting data about the use of a single website for defendant's *own use* and it did not seek plaintiff's consent for the use of the software. 153 F.4th at 786–87. Courts in this district have considered and rejected similar attempts to invoke *Popa*, noting that the tracking technologies at issue "are . . . distinguishable, both in users' interactions with them and their capabilities" and "*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *20. Similarly, in *Kishnani*, plaintiffs did not allege the aggregation of their data allowed for the creation of user profiles and tracking across the internet; they complained that defendant used a pen register without consent. 2025 WL 1745726, at *3. In *Khamooshi* none of the plaintiffs

alleged that they "rejected" cookies; they merely contended that they did not consent to the disclosure of their IP addresses. 786 F. Supp. 3d at 1177. The facts in the instant case are distinguishable, not only because of the types of Plaintiffs' information Defendant collected, but because of the manner by which it collected them.

Defendant's contention that Plaintiffs' claim of injury by the devaluation of personal information is deficient because Plaintiffs have not established both the existence and impairment of a market for their information, is also irrelevant. *See* ECF No. 11 at 15. Although the devaluation of personal information can be a cognizable harm, that is not the only or primary type of harm that Plaintiffs alleged; Plaintiffs repeatedly allege that, by offering them the false "choice" to opt-out, they suffered a loss of their "right to control the dissemination and use of their" data. ECF No. 1 ¶¶ 101–102, 189. This is a concrete harm sufficient for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information). Plaintiff also alleges that Defendant was unjustly enriched by invading Plaintiffs' privacy and property rights. *See* ECF No. 1 ¶¶ 102, 215–224. This, too, is a cognizable basis for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599–600 (noting a plaintiff can seek disgorgement of profits from a privacy invasion and thus has a personal stake in the controversy).

### 3. Despite Defendant's declaration, Plaintiff Barrales has standing.

In support of its Motion, Defendant attaches a Declaration stating that it "has never owned or operated enfamil.com" and asks this Court to dismiss Plaintiff Barrales' claims against it on that basis. ECF No. 11 at 16 (citing ECF No. 11-1). This Declaration and its contents are not properly subject to judicial notice. First, Defendant never requested judicial notice for its declaration and cannot do so on reply. *See generally* Judge's Standing Order, IV.G (requiring request for judicial notice); *Shanahan v. IXL Learning, Inc.*, No. 24-v-cv-02724-RFL, 2024 U.S. Dist. LEXIS 203111, at *13 (N.D. Cal. Nov. 1, 2024) (*citing Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)). Second, the "declaration is not a proper subject for judicial notice, as the facts contained therein are not 'generally known within the trial court's territorial jurisdiction,' and cannot 'be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned.'" *Whitaker v. URBN US Retail LLC*, No. 21-cv-01480-BLF, 2022 U.S. Dist. LEXIS 16006, at *6–7 (N.D. Cal., Jan. 28, 2022) (citing Fed. R. Evid. 201(b)). *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 (9th Cir. 2018) (even if a document is subject to judicial notice, the inferences the court can draw from that document must "not [be] subject to reasonable dispute"). Accordingly, the Court cannot dismiss Plaintiff Barrales' claims.

### B.    This Court Has Specific Jurisdiction Over Defendant.

Defendant asserts that this Court lacks specific jurisdiction over it because it did not purposefully direct its activities towards California under the *Calder* test. ECF No. 11 at 17. Under the *Calder* test, a defendant "purposefully directs" its activities at the forum state when it is alleged to have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783 (1984). *See also Yahoo! Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*). Defendant does not deny that it committed intentional acts, only that these acts were not expressly aimed at California or known to cause foreseeable harm suffered there. *See* ECF No. 11 at 17–20.

### 1.    Defendant's activities were expressly aimed at California.

"[T]he Supreme Court has considered and rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (*en banc*) (citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 355, 363 (2021)). Additionally, the Ninth Circuit rejected "some sort of differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct." *Id.* at 758. Instead, an "interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not random, isolated, or fortuitous,' even if that platform cultivates a 'nationwide audience for commercial gain.'" *Briskin*, 135 F.4th at 758 (internal citations omitted) (holding *en banc* that the act of installing cookies on website users' browsers was sufficient to establish express aiming, and thus, personal jurisdiction, in the forum where the users resided).

Here, Plaintiffs' allegations track those the Ninth Circuit determined were sufficient to establish express aiming in *Briskin*. As in *Briskin*, Plaintiffs allege that "Defendant targeted California consumers" and "knew the location of consumers like Plaintiffs . . . either prior to or shortly after causing the Third Parties to use cookies on their devices." ECF No. 1 ¶ 97. *See also id.* ¶ 26; *Briskin*, 135 F.4th at 749 (alleging defendant's interactive platform "deliberately targeted" California users because "its geolocation technology allowed it to know that [users'] device[s] [were] located in California when it installed cookies"). Also, as in *Briskin*, Plaintiffs' "complaint alleges that [defendant] uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent." *Briskin*, 135 F.4th at 749. *See also* ECF No. 1 ¶ 4, 24, 37, 70, 155. Plaintiffs' claims mirror an almost identical factual scenario that this Court's applicable precedent deemed sufficient to show express aiming.

Additionally, Defendant does not and cannot refute that it purposefully availed itself of the privilege of conducting business in California. Purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiffs alleged that Defendant solicits business in California through "multiple direct sales transactions"—like those purchases that occur through the "[s]hop the Durex range" and "buy now" pages on Defendant's websites www.durex.com and www.k-y.com—which are "sufficient to demonstrate purposeful availment." *Residence Mut. Ins. Co. v. Air Vent*, CVRI2103307, 2022 Cal. Super. LEXIS 98962, at *8 (Dec. 12, 2022) (*citing Jayone Foods, Inc. v. Aekyung Indus. Co. Ltd.*, 31 Cal. App. 5th 543, 548 (2019)). Separately, Plaintiffs allege that Defendant's Privacy Policy was an enforceable promise (ECF No. 1 ¶ 1, 27–29, 37, 98, 110, 120, 130, 139, 153, 166, 206) made to California consumers, and conferred an economic benefit on Defendant in exchange for consideration, evidencing the solicitation, execution, or performance of a contract directly. *Schwarzenegger*, 374 F.3d at 802.

### 2.    Defendant foresaw the harms Plaintiffs suffered.

Defendant argues that Plaintiffs cannot meet the final prong of the *Calder* test—that the harms they experienced were reasonably foreseeable—because Third Parties, not Defendant, caused them. ECF No. 11 at 18–19. Not so. Plaintiffs plead that Defendant knew full well that its Websites could reach California residents and share their data with Third Parties. "The touchstone of the foreseeability requirement is not the magnitude of the harm, but rather its foreseeability[,]" and harm is foreseeable when a jurisdictionally sufficient amount is suffered in the forum state. *Yahoo!*, 433 F.3d at 1207 (citing *Burger King v. Rudzewicz*, 471 U.S. 462 (1985)).

Here, it was foreseeable that Defendant's actions would cause harm in California because the Websites allow "users to search for where products are sold by allowing users to input data into the location search bar" and these locations include California. ECF No. 1 ¶ 46. Additionally, Defendant designed the Websites to allow cookies to be installed on Plaintiffs' browsers that include their geolocation data and IP addresses (which are in California). *Id.* ¶¶ 3, 17, 23, 25, 33, 36, 54–55, 60–61, 69, 75–76, 81, 84–85, 91–92. Courts have held that "the installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries." *Briskin*, 135 F.4th at 760.

Defendant asserts that it is not enough for Plaintiffs to allege that their geolocation data was tracked and collected by Third Parties, because Defendant could not access this geolocation data. ECF No. 11 at 19. However, Defendant ignores Plaintiffs allegations that, in the course of their interactions with the Websites, Defendant received Plaintiffs' information, which includes geolocation data, and Defendant is "capable of determining whether a user is accessing any of the Websites from California[.]" ECF No.1 ¶¶ 25–26. Even if this were not true, Defendant could foresee that Third Parties could use their Websites to access Plaintiffs' data because they both designed their Websites to allow this third-party access and expressly offered Plaintiffs, who are users in California, the option to opt-out of it. *Id.* ¶¶ 3, 36–37, 110, 120, 130, 139 185. It strains credulity for Defendant to argue it could not foresee that Third Parties could track Plaintiffs'

OPPOSITION TO MOTION TO DISMISS AND STRIKE – CASE NO. 5:25-CV-10643-BLF

California-specific data when it chose to design its Websites to present Plaintiffs with the false option to opt-out of the Websites collecting and transmitting this very data.

In addition, Plaintiffs have alleged that their claims arise out of and relate to Defendant's forum-related activities. *Mavrix Photo, Inc., v. Brand Techs. Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011). Their claims arise out of Defendant's contact with their devices, which are in California, and caused the very same injuries Defendant falsely represented Plaintiffs could prevent by clicking "Disable All." In short, there is jurisdiction because the Complaint is rife with allegations Defendant's "contacts are its 'own choice and not random, isolated, or fortuitous.'" *Briskin*, 135 F.4th at 749 (citing *Ford Motor Co.*, 592 U.S. at 359).

### 3.     Defendant cannot claim California jurisdiction is unreasonable.

Because Plaintiffs met their burden, the burden shifts to Defendant to set forth a "compelling case" that the exercise of jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. Defendant has not done so. Defendant admits that at least one factor weighs in Plaintiffs' favor, the other is neutral, and offers little support for its contention that the remaining factors (the extent of Defendant's purposeful interjection in California's affairs; the conflict with Defendant's state's sovereignty; the efficiency of a resolution; the importance of California to Plaintiffs interest in convenient and effective relief; and the existence of an alternative forum) weigh against this Court's jurisdiction. ECF No. 11 at 21. Because the actual placement of the cookies occurred on devices in California, Plaintiffs' Complaint and precedent in this Court support finding Defendant's purposeful interjection into California and its importance as a forum. *See supra* II.B.1-2. Although Defendant's home states have online privacy laws, Defendant does not explain how they conflict with California's laws or that these states present adequate alternative forums for Plaintiffs. Defendant's contention that the Parties could more meaningfully resolve this dispute in its home states because of the availability of witnesses is belied by the reality of electronic discovery and that Third Parties, such as Google and Meta, are headquartered in this District. Plaintiffs met their burden for this Courts's exercise of jurisdiction and Defendant offered no compelling argument that it would be unjust.

## C.    Plaintiffs Sufficiently Pled CIPA Claims.

### 1.    The statute of limitations does not bar Plaintiffs' claims.

Defendant argues that CIPA's statute of limitations bars Plaintiffs' claims, but the statute of limitations is "generally an affirmative defense rather than an element of the plaintiff's claim." *Turner v. Google LLC*, 737 F. Supp. 3d 869, 877 (N.D. Cal. 2024). *See also United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (noting complaint need not address statute of limitations raised as affirmative defense). Affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless plaintiffs plead themselves out of a claim by "admit[ing] all the ingredients of an impenetrable defense[.]" *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018). Where the defendant moves to dismiss a claim as untimely under the applicable statute of limitations, the motion can be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Here, Plaintiffs' do not need to plead around a statute of limitations defense, they "simply need to plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. Mar. 26, 2024). Because they do not allege that they visited Defendant's Websites or, more importantly, learned of Defendant's misconduct during a time period outside the statute of limitations, Plaintiffs' have done so.

### 2.    CIPA applies to online tracking technologies.

Defendant admits that "numerous courts have permitted these cases to proceed beyond the pleading stage" but urges the Court to dismiss Plaintiffs CIPA claims because Sections 631 and 638.51 "were never intended to apply to alleged Internet tracking, but instead are limited to telephones and other person-to-person communications." ECF No. 11 at 26–27. But it is well established that "Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022). And courts in this District agree that Section 638.51 encompasses internet trackers. *See e.g.*, *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *30; *Shah v. Fandom*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024);

- 14 -

*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases). This is because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7.

Although Defendant claims to rely on "[t]he plain text of Section 638.51[,]" it engages in statutory contortionism to argue that because, the California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.* was enacted *after* CIPA and addressed data privacy in a specific way (by providing "opt out" rights), "Plaintiffs' proposed application of CIPA would undermine the CCPA by creating an opt-in consent requirement[.]" ECF No. 11 at 23–26. First, this mischaracterizes Plaintiffs' Complaint, which is not premised on Defendant's failure to provide opt-in consent, but on its false promises to honor Plaintiffs' opt-out rights. Second, Defendant cannot simultaneously rely on CIPA's plain language and then ask the Court to look beyond it to later-enacted statutes. *Fandom*, 754 F. Supp. 3d at 931 ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."). Lastly, the Ninth Circuit has repeatedly held that "legislative history and statutory text demonstrate that . . . the California legislature intended to protect these historical privacy rights when they passed . . . CIPA." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608. Defendant offers no reason for this Court to "take a fresh look at this issue" and limit CIPA. ECF No. 11 at 26.

Because the plain language of each statute encompasses internet technology, Defendant's lenity argument (ECF No. 11 at 26) is also unavailing. The rule of lenity applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,'" after using all available tools of statutory interpretation. *Ocasio v. United States*, 578 U.S. 282, 295, n.8 (2016); *accord United States v. Anderson*, 46 F.4th 1000, 1001 n.1 (9th Cir. 2022).

### 3.   Defendant's conduct involves a process under section 638.51.

Defendant also attempts to defeat Plaintiff's claims by asserting that "[u]nder the plain text of Section 638.51, the 'cookies and corresponding software code' cannot be a trap and trace device because they are alleged to have captured the contents of Plaintiffs' communications." ECF No. 11 at 27. First, the Complaint does not allege that *every* third-party code at issue eavesdrops on the contents of private communications in *all* cases. Second, Defendant ignores that the statute defines a "pen register" as "a device ***or process*** that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b) (emphasis added). Plaintiffs allege the "cookies and the corresponding software code installed by Defendant on its Websites are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices." ECF No. 1 ¶ 196. The aspect or "process" of a tracking technology that records or decodes such information is a "pen register" regardless of whether some *other* process associated with the technology intercepts contents of a particular communication. And, in any event, such a technology can still be a pen register even if it happens to capture both process information and contents simultaneously. *See e.g., In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); Cal. Penal Code § 638.50)).

Courts in this District have repeatedly accepted similar allegations and rejected arguments such as Defendant's as contrary to the statute. *See e.g.*, *Fandom*, 754 F. Supp. 3d at 931; *Greenley*, 684 F. Supp. 3d at 1050–51; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *130 (rejecting argument that § 638.51 is limited to telephones); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (collecting cases). Like the plaintiffs in these cases, Plaintiffs allege that the cookies and the corresponding software code installed by Defendant on its Websites are each a "device or process." *Fandom*, 754 F. Supp. 3d at 931 ("By the plain meaning of § 638.50(b),

collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue."); *Greenley*, 684 F. Supp. 3d at 1050 ("A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'"); *Mirmalek*, 2024 US Dist. LEXIS 227378, at *9 ("Plaintiff sufficiently alleges that the Trackers record addressing information in the form of IP addresses."). This is sufficient under Section 638.51.

### 4. Defendant's conduct violated Section 631.

Defendant argues that, because it did not know Third Parties were gathering Plaintiffs' data, it could not aid and abet any CIPA violations in violation of section 631(a). ECF No. 11 at 29. However, Defendant acknowledges that Plaintiffs allege it "configured" its Websites to cause "Plaintiffs and Class members' browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications to Third Parties[,]" and "willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs and Class members using the Third Parties' cookies and to accomplish the wrongful conduct alleged [in the complaint]." *Id.* at 29 (citing ECF No. 1 ¶¶ 183, 173–191). This is all that is required. *See e.g., James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953–54 (N.D. Cal. 2023) (rejecting argument that Disney "cannot be held liable under . . . CIPA unless it intended to have [a third party] intercept the information at issue" because "it can be reasonably inferred that [Disney] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . *so that [Disney] could market to and attract new customers*.").

Defendant's role is especially critical, where, as here, "the only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools . . . for use by "developers" (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom" and Plaintiffs lack "the technical knowledge necessary"

to "know how the Websites are programmed, which can change over time[.]" ECF No. 1 ¶¶ 112, 122, 132, 141. Plaintiffs' allegations that Defendant "designed the Websites to include resources and programming scripts from third parties" suffice at the pleadings stage. ECF No.1 ¶ 2.

### D.     Plaintiffs' Pleadings Satisfy Rule 9(b).

Defendant argues that Plaintiffs did not meet Rule 9(b) because they "fail to plead the 'when . . . of the misconduct alleged' and . . . allege only that they visited some of the alleged websites at some unspecified point or points in the last four years" so it cannot "determine how the websites were using any cookies placed on the users' devices on those specific dates." ECF No. 11 at 29–30. This argument is specious. First, Defendant clearly knows the "when" because they describe it as the "last four years." *Id.* Second, to the extent that Defendant is confused about the "when," that confusion results from Defendant's pre-litigation, remedial actions because it pre-emptively changed its cookie banners "[a]t an exact time unknown to Plaintiffs but which was, on information and belief, sometime following" Plaintiffs' March 29, 2024 letter to Defendant regarding the violations that are the subject of their Complaint. ECF No. 1 fn.1. When, as here, essential information is within the other parties' knowledge, Rule 9(b) permits a more general pleading standard. *See e.g., Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988).

Lastly, to the extent that Defendant argues that Plaintiffs must allege *exactly* when and what specific information Defendant misappropriated, that would essentially require any would-be Plaintiff to record his network activity all the time, *expecting* Defendant to disregard his privacy elections. That would be a de facto bar to Plaintiffs from bringing successful internet privacy cases. Moreover, it would open all Plaintiffs *who survive* a Motion to Dismiss to an attack on their Article III standing, as they would be *expecting* that their privacy rights would be infringed upon. *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (no Article III standing when a "tester" expected to be harmed by privacy violations).

Additionally, Defendant claims that Plaintiffs fail to allege resulting damage because "they do not explain which particular tracking technology was involved. . . and how [it] caused them to suffer harm." ECF No. 11 at 30. But Plaintiffs specifically pled the harm suffered. *See supra* at II.C. *See also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 ("Plaintiffs

have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing"); *Rodriguez v. Google*, No. 20-cv-04688, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection.").

In short, Defendant's Rule 9(b) argument relies on the false premise that Plaintiffs' Complaint must contain conclusive evidence prior to discovery. *See e.g., In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1234 (N.D. Cal. 2012) (Rule 9(b) demands "detailed information sufficient . . . to place [defendant] on notice of the basis for [plaintiff's] claims and demonstrate[] that [plaintiff is] not on a 'fishing expedition.'"); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). Much of the allegedly missing information (e.g., the individual pages visited, the exact dates and cookie banners used) is not essential at this stage of the litigation and Defendant does not meet its burden of explaining why it needs that information to answer the Complaint. Indeed, the bulk of what Defendant alleges is missing is within Defendant's exclusive control (e.g., the identity of the cookies that Defendant's Websites placed on visitors' computers, and when it changed which cookie banners on which Websites), can be uncovered during discovery, or has actually been disclosed to it (either in the Complaint or Plaintiffs' CLRA letter and negotiations).

### E.    Plaintiffs Properly Pled Invasion of Privacy and Intrusion Upon Seclusion.

Defendant argues Plaintiffs did not plead an invasion of privacy because its conduct was neither highly offensive nor did it disclose information over which Plaintiffs had a reasonable expectation of privacy. *See* ECF No. 11 at 30–31. Defendant rehashes these arguments in seeking dismissal of Plaintiffs' intrusion upon seclusion claims, with additional unsupported assertions that no "intrusion" occurred because Plaintiffs' communications were made on Defendant's "own websites" and any collection of information was "routine commercial behavior." *Id.* at 32. Defendant's briefing tacitly acknowledges that California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and

(2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–87 (2009). Plaintiffs satisfy both.

First, Plaintiffs had a reasonable expectation of privacy based on both the information Defendant gathered and disclosed and the manner in which it was disclosed. Where, as here, defendants collected and disclosed aggregated data "allegations that [defendant] allegedly compiled highly personalized profiles from sensitive browsing histories and habits" sufficed "to bring claims for invasion of privacy [and] intrusion upon seclusion . . . because they adequately alleged privacy harms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 604. *See also Katz-Lacabe v. Oracle Am., Inc.,*, 668 F. Supp. 3d 928, 942 (N.D. Cal. April 6, 2023) ("Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a 'vast repository of personal data'—from compiling Plaintiffs' browsing activity, online communications, *and* offline activity—is what contravenes the reasonable expectation of privacy. This is in line with the analysis provided in *Facebook Tracking*."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *28 (N.D. Cal. Aug. 16, 2021) ("The Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even if the individual pieces of information are publicly available, constitutes a significant invasion of privacy.") (citation omitted). What's more, Defendant enhanced Plaintiffs' expectations of privacy by compiling users' data after representing it would honor their choice to keep such information private.

Second, Defendant's intrusion was highly offensive. *See e.g., United States v. Jones*, 565 U.S. 400, 418 (2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("Determining whether a defendant's actions were 'highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim,

the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.") (citation omitted). Both the nature of *what* Defendant collected and disclosed and the deceptive *way* it did so render its conduct highly offensive. *See supra* at II, III.A.1-2. B.1, C.3-4.

Additionally, the nature of Defendant's Websites involved sexual and health related information and products, which consumers may prefer to access online where they have a greater expectation of privacy and a lower chance of embarrassment, heightening both the expectation of privacy and the offensiveness of the invasion/intrusion. *See supra* at III.A.1. Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion" *Hill*, 7 Cal. 4th 37; *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar "claims based on a determination of how offensive or serious the privacy intrusion is."); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with *Motorola*); *Rodriguez v. Google LLC* (*Rodriguez I*), No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal. May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to Facebook"). Consequently, Defendant's call for dismissal is both meritless and premature.

## F.    Plaintiffs Sufficiently Pled Unjust Enrichment Claims.

Defendant argues that Plaintiffs' unjust enrichment claims are insufficiently pled because they failed to sufficiently plead fraud under Rule 9(b) and identify what benefits were conferred upon Defendant as a result of their conduct. *See* ECF No. 11 at 32. Plaintiffs claims are sufficient under Rule 9(b). *See supra* at III.D. Even if they weren't, the Ninth Circuit allows independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *2 (9th Cir. Jul. 17, 2017); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803 (N. D. Cal. 2019) (permitting an independent unjust enrichment claim alongside valid breach of contract claims). Plaintiff plainly alleges that Plaintiffs' information had value and that Defendant unjustly benefitted from enabling third parties to take and use that information. ECF

No. 1 ¶¶ 97–102, 216–24. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d. 1033, 1051 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claim in a privacy case).

### G. Plaintiffs Sufficiently Pled Punitive Damages.

In arguing that Plaintiffs' punitive damages claims must be dismissed, Defendant recycles the notion that Plaintiffs failed to sufficiently plead fraud under Rule 9(b). *See* ECF No. 11 at 32. Irrespective of whether Plaintiffs meet Rule 9(b), which they do, demands for punitive damages have no heightened pleading standard; they need only raise more than a possibility of entitlement to relief. *See Crowder v. Shade Store, LLC*, No. 23-cv-02331-NC, 2024 U.S. Dist. LEXIS 114470, at *28–30 (N.D. Cal. Jun. 26, 2024); *Omni King, Inc. v. Accelerant Specialty Ins. Co.*, No. 5:23-cv-000048-SSS, 2023 U.S. Dist. LEXIS 87708, at *10 (C.D. Cal. Apr. 19, 2023). Defendant also asserts that Plaintiffs punitive damages claims must be dismissed because they cannot assert punitive damages against an entity, as opposed to an individual. *See* ECF No. 11 at 32–33. This in nonsensical; Plaintiffs allege that Defendant's use of the third-party resources on the Websites was and is done so "pursuant to agreements between Defendant and those Third Parties." ECF No. 1 ¶ 19. "[T]he only plausible conclusion is that an officer, director, or managing agent of [Defendants] authorized, or at the least had knowledge or conscious disregard of, [the alleged] practices." *Crowder*, 2024 U.S. Dist. LEXIS 114470, at *29 (citing *Jager v. Davol, Inc.*, No. 16-1424-JGB, 2016 U.S. Dist. LEXIS 188821, at * 19 (C.D. Cal. Oct. 20, 2016) ("[B]ased on the facts alleged in the Complaint, it is unreasonable to assume that the alleged conduct of which Plaintiffs complain . . . is attributable to anyone without directorial responsibility.")); *Ruhnke v. Skinmedica, Inc.*, No. 14-0420-DOC, 2014 U.S. Dist. LEXIS 207235, at *11–32 (C.D. Cal. Sept. 5, 2014) (plaintiff adequately pled a demand for punitive damages where "the fraudulent conduct alleged in the FAC is corporate-wide" because these "[d]ecisions . . . are inherently tied to *corporate policy*") (internal citations omitted). Additionally, "at the pleading stage, the Plaintiff can plead conflicting theories" and Plaintiffs should be permitted to do so here regarding damages, without warranting dismissal. *Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023).

**H.    Defendant's Motion to Strike is Baseless.**

Defendant asks the Court to strike the Complaint's references to airwick.us, biofreeze.com, clearasil.us; finishdishwashing.com; mucinex.com; veet.us; woolite.us; or schiffvitamins.com because "Plaintiffs never allege that they ever visited these Websites[.]" ECF No. 11 at 33. These websites should remain in the Complaint because Defendant tacitly admits it operates them and Plaintiffs specifically allege they are designed and function in a way that is "identical" or "similar" to the Websites they visited. ECF No. 1 ¶¶ 34–35, 65, 67. Because these allegations concern the technical functions at the heart of this dispute, they "are central to this litigation. . . [and] not the type of 'redundant, immaterial, impertinent, or scandalous matter' appropriate for dismissal via a motion to strike." *Hamzeh v. Pharmavite LLC*, No. 24-cv-00472-HSG, 2025 U.S. Dist. LEXIS 34941, at *20 (N.D. Cal. Feb. 26, 2025) (denying motion to strike references to unidentified products and variations on labelling claims that are "sufficiently similar" to the label at issue and noting such questions "are best suited for class certification."). Defendant's motion to strike should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss must be denied. If, in the alternative, this Court finds any claims in the Complaint insufficient, Plaintiffs request leave to amend to cure the identified deficiencies. *See e.g., DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend is only properly denied "where the amendment would be futile"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (internal citations omitted).

Dated: April 24, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
  todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

OPPOSITION TO MOTION TO DISMISS AND STRIKE – CASE NO. 5:25-CV-10643-BLF