United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TINAMARIE BARRALES, DAVID FRANKLE, STACY PENNING, and MARIA SANTACRUZ, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

RECKITT BENCKISER LLC,

Defendant.

Case No. 25-cv-10643-BLF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, WITH LEAVE TO AMEND**

[Re: ECF 11]

In this putative class action, Plaintiffs Tinamarie Barrales ("Barrales"), David Frankle ("Frankle"), Stacy Penning ("Penning"), and Maria Santacruz ("Santacruz") assert that Defendant Reckitt Benckiser LLC ("Reckitt") violated their privacy rights by enabling third-party tracking of their website browsing activities even after they selected the option to "Disable All" cookies on Reckitt's websites. Plaintiffs assert privacy and fraud claims under California law.

Before the Court is a Motion to Dismiss and to Strike Portions of the Complaint filed by Defendant Reckitt Benckiser LLC ("Reckitt"). Reckitt seeks relief under four provisions of Rule 12 of the Federal Rules of Civil Procedure. First, Reckitt seeks dismissal of the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Second, Reckitt seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction. Third, Reckitt seeks dismissal under Rule 12(b)(6) for failure to state a claim. Fourth, Reckitt asks the Court to strike portions of the complaint under Rule 12(f).

Defendant Reckitt's motion is GRANTED IN PART AND DENIED IN PART, WITH LEAVE TO AMEND, as discussed below.

United States District Court
Northern District of California

## I. BACKGROUND

Plaintiffs filed this suit in federal court on December 12, 2025, asserting claims arising out of Defendant's alleged violations of their privacy rights under California law. *See generally* Compl., ECF 1. Plaintiffs allege that they are California residents and that Defendant Reckitt is a Delaware limited liability corporation with its principal place of business in New Jersey. *See id.* ¶ 10. Federal subject matter jurisdiction is premised on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

While in California, Plaintiffs allegedly visited websites owned and operated by Reckitt, including the Enfamil Website (Barrales), the Durex Website (Frankle), and the K-Y Website (Penning and Santacruz). *See* Compl. ¶¶ 103, 113, 123, 133. According to Plaintiffs, those websites offered them the option to "Disable All" cookies, that is, to browse the websites without being tracked or targeted by third-party data brokers and advertisers. *See id.* ¶¶ 2, 106, 116, 126, 135. Plaintiffs claim they selected the "Disable All" cookies option, but Defendant Reckitt nonetheless caused third-party cookies to be placed on their devices to track browsing activities and transmit that information to third parties along with Plaintiffs' user data. *See id.* ¶¶ 107-110, 117-120, 127-130, 136-139. Those third parties include Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick, Google Analytics and YouTube), ByteDance Ltd. (TikTok), LiveRamp Holdings, Inc. (rlcdn.com), Salesforce, Inc. (Evergage), The Trade Desk, Inc. (adsrvr.org), and Snap Inc. (Snapchat). *See id.* ¶ 2.

The complaint alleges that Plaintiffs' visits to the websites occurred "on one or more occasions during the last four years." Compl. ¶¶ 103, 113, 123, 133. A footnote appears to narrow that time frame, stating that "[o]n or about March 29, 2024, Plaintiffs' counsel notified Defendant of its ongoing invasions of privacy and alleged violations of law, as described herein." Compl. ¶ 1 fn. 1. The footnote suggests that Plaintiffs visited the websites before March 29, 2024.

Plaintiffs seek to represent a class of "[a]ll persons who browsed any of the Websites in the State of California after clicking the 'Disable All' button in the popup cookies consent banner, or who otherwise disabled cookies through the 'Manage Preferences' link in the popup cookies consent banner." Compl. ¶ 142. Plaintiffs assert the following claims: (1) Invasion of Privacy;

United States District Court
Northern District of California

(2) Intrusion Upon Seclusion; (3) Wiretapping in Violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631; (4) Use of a Pen Register in Violation of CIPA, Cal. Pen. Code § 638.51; (5) Common Law Fraud, Deceit and/or Misrepresentation; and (6) Unjust Enrichment. *See id.* ¶¶ 150-224. Plaintiffs seek statutory and compensatory damages, restitution, and injunctive relief.

## II. DISCUSSION

Defendant Reckitt contends that the complaint is subject to dismissal under Rules 12(b)(1), 12(b)(2), and 12(b)(6), and that certain allegations should be stricken under Rule 12(f). The Court addresses each of Defendant's contentions in turn.

### A. Motion to Dismiss under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

#### 1. Legal Standard

A party may challenge the Court's subject matter jurisdiction in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Dismissal is appropriate under Rule 12(b)(1) if the plaintiff lacks Article III standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Three elements must be satisfied for Article III standing to exist: "(1) the plaintiff must have suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent'; (2) 'there must be a causal connection between the injury and the conduct complained of' (often described as whether the injury is 'fairly traceable' to the challenged conduct); and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, the challenger may present extrinsic evidence establishing the lack of subject matter jurisdiction. *See id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its

burden of establishing subject matter jurisdiction." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (internal quotation marks and citation omitted). "At that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.*

**2. Analysis**

Defendant Reckitt makes a factual attack on jurisdiction with respect to the claims asserted by Plaintiff Barrales and a facial attack with respect to the claims asserted by Plaintiffs Frankle, Penning, and Santacruz.

**a. Barrales**

All of Barrales' claims are grounded in her experiences while visiting the Enfamil Website, enfamil.com, which the complaint alleges is owned or operated by Reckitt. Reckitt raises a factual challenge to Barrales' claims by submitting evidence that it does not in fact own or operate the Enfamil Website. Specifically, Reckitt submits the declaration of its Chief Customer Officer, Arturo Petrozza, who states under penalty of perjury that Reckitt "has never owned or operated enfamil.com at any time." Petrozza Decl. ¶ 3, ECF 11-1. That evidence establishes that the alleged injury suffered by Barrales is not fairly traceable to Reckitt and thus that Barrales lacks Article III standing to pursue her claims against Reckitt.

Barrales argues that the Court should not consider the Petrozza declaration because it is not a proper subject for judicial notice. Barrales's argument is misplaced. The Court need not take judicial notice of the Petrozza declaration in order to consider it in evaluating Reckitt's factual attack on subject matter jurisdiction under Rule 12(b)(1). A defendant may raise a factual attack through the submission of extrinsic evidence. *See Safe Air for Everyone*, 373 F.3d at 1039. Reckitt has done so here, thus shifting the burden to Barrales to furnish affidavits or other evidence necessary to establish subject matter jurisdiction. *See Mecinas*, 30 F.4th at 896. Barrales has failed to meet that burden.

The Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is GRANTED as to the claims asserted by Plaintiff Barrales. Given Reckitt's unrefuted evidence that it does not own or operate the Enfamil Website, the Court ordinarily would not grant leave to amend those claims. However, at the hearing Plaintiffs' counsel suggested that Reckitt actually does own or

operate the Enfamil Website visited by Barrales and that it might be possible to amend the complaint to establish Article III standing for Barrales. Given that colloquy, the Rule 12(b)(1) motion is GRANTED WITH LEAVE TO AMEND as to the claims asserted by Plaintiff Barrales.

**b. Frankle, Penning, and Santacruz**

Reckitt makes a facial attack on jurisdiction with respect to the claims of Frankle, Penning, and Santacruz, arguing that the allegations of the complaint do not establish those Plaintiffs suffered a concrete injury as required under Article III. In opposition, Plaintiffs contend that their allegations are sufficient to establish the requisite concrete injury.

The Supreme Court has explained that concrete injury may consist of "traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). However, "[v]arious intangible harms can also be concrete." *Id*. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," for example, "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*.

Reckitt directs this Court's attention to the Ninth Circuit's application of those principles in *Popa*, a case involving a putative class action for privacy violations arising from a pet supply website's use of "session-replay technology" to capture and reproduce customers' interactions with the website. *Popa*, 153 F.4th at 786. A business utilizing that technology can access useful consumer data to help determine which parts of its website are effective with customers and which are not. *See id*. In considering whether the plaintiff had alleged a concrete injury sufficient to support Article III standing, the Ninth Circuit held that the relevant question was whether she had "suffered a harm that has traditionally been actionable in our nation's legal system." *Id*. at 791. The plaintiff pointed to the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts. *See id*. The Ninth Circuit found that "Popa does not explain how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. Noting that the plaintiff had not identified any "embarrassing, invasive, or otherwise private information collected," the *Popa* court likened the monitoring of her interactions

with the pet supply website "to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. Reckitt argues that Plaintiffs in the present case likewise have failed to explain how the tracking of their interactions with Reckitt's websites resulted in the collection or disclosure of information that would be "highly offensive" to a reasonable person.

*Popa* is distinguishable from the present case, in which Plaintiffs allege that Reckitt affirmatively created an expectation of privacy by presenting them with the option to protect their information, then violated Plaintiffs' expectation of privacy by disregarding Plaintiffs' selection of the "Disable All" cookies option and enabling third-party tracking of Plaintiffs' browsing activity. Moreover, the websites visited by Plaintiffs here advertised products such as condoms and lubricant and therefore were of a more sensitive nature than the pet supply website in *Popa*. Other courts in this district have found Article III standing under similar circumstances, distinguishing *Popa* on the grounds that *Popa* did not involve the plaintiff's express rejection of cookies and/or that *Popa* involved the tracking of activities on a pet supply website that did not deal with particularly sensitive information. *See, e.g., Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865-67 (N.D. Cal. 2025) (finding Article III standing based on allegations that the defendant ignored the plaintiff's express rejection of cookies on a healthcare related website); *de Ayora v. Inspire Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *2 (N.D. Cal. Dec. 22, 2025) ("[T]he information allegedly collected here is more intrusive than that considered in *Popa*."); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *3 (N.D. Cal. Nov. 24, 2025) (finding Article III standing based on allegations that the defendant ignored the plaintiff's clear rejection of cookies, and thereby "deprived him of control of his personal information regarding his online activity, which is a concrete injury to his right to privacy sufficient for Article III standing").

This Court agrees with the latter decisions to the extent they hold that a concrete injury may be established by allegations that a website operator tracked a user's digital activity after the user expressly rejected cookies, particularly if the website relates to sensitive topics. However, when considering whether a plaintiff has alleged injuries with a sufficiently close relationship to

traditionally actionable harms, the court must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa*, 153 F.4th at 791. The complaint in the present case is light on details regarding the named Plaintiffs' specific experiences with Defendant's websites. Instead, most of the allegations are framed in terms of the collective class experience or the experience of a composite consumer: "The Websites cause users' devices to store and/or transmit both first-party and third-party tracking cookies," Compl. ¶ 20; "In particular, when users clicked 'Disable All' cookies in the consent banner, or disabled such cookies through the 'Manage Preference'" link, Defendant nonetheless continued to cause the Third Parties' cookies to be placed on users' devices and/or transmitted to the Third Parties along with user data . . .", *id.* ¶ 33; "Data about users' browsing history enables Defendant to spot patterns in users' behavior on the Websites and their interests in, among other things, Defendant's consumer goods products," *id.* ¶ 99. The only information provided about Plaintiffs Frankle, Penning, and Santacruz in particular is that they visited certain websites operated by Defendant, selected the option to "Disable All" cookies, and browsed on the websites. *See id.* ¶¶ 113- 141. Those allegations are insufficient to show that Plaintiffs suffered the type of concrete harm necessary for Article III standing.

When the Court raised its concern regarding the lack of particularity in the pleading regarding Plaintiffs' specific experiences and resulting harm, Plaintiff's counsel indicated that more details could be provided if leave to amend were granted. Accordingly, the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is GRANTED WITH LEAVE TO AMEND as to the claims asserted by Plaintiffs Frankle, Penning, and Santacruz.

### B. Motion to Dismiss under Rule 12(b)(2) for Lack of Personal Jurisdiction

#### 1. Legal Standard

A party may challenge the Court's personal jurisdiction over it by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). When a defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The plaintiff may meet that burden by submitting affidavits and discovery materials. *See id.* "Where, as here, the defendant's motion is

based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be accepted as true and factual disputes created by conflicting affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation marks and citation omitted).

When there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which it sits. *Schwarzenegger*, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-801. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A federal district court may exercise either general or specific personal jurisdiction over a nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General personal jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (quotation marks and citation omitted). Specific personal jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 127-28.

**2. Analysis**

Because Defendant Reckitt has raised a challenge to personal jurisdiction, Plaintiffs bear the burden of establishing that jurisdiction is proper. Plaintiffs do not argue that Defendant is a resident of California, nor do Plaintiffs attempt to establish the existence of general personal jurisdiction over Defendant.

Plaintiffs argue that Defendant's contacts with California give rise to specific personal jurisdiction in this case. The Ninth Circuit has established a three-prong test for whether a court

can exercise specific personal jurisdiction over a non-resident defendant: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. "The minimum contacts test ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quotation marks and citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff succeeds, the burden shifts to the defendant to set forth a "compelling case that the presence of some other considerations would render jurisdiction [in California] unreasonable." *Freestream*, 905 F.3d at 607.

**a. Purposeful Direction**

Under the first prong of the *Schwarzenegger* test, Plaintiffs must show either purposeful direction or purposeful availment by Defendant. "[A] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Freestream*, 905 F.3d at 605 (quotation marks and citation omitted). "By contrast, [a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. (quotation marks and citation omitted). "[A] purposeful availment analysis is most often used in suits sounding in contract, whereas a purposeful direction analysis is most often used in suits sounding in tort." *Id*. (quotation marks and citation omitted).

The Court finds that Plaintiffs' claims sound in tort and therefore that a purposeful direction analysis is appropriate. "To analyze whether the tort was purposefully directed to the

forum state we employ the *Calder* effects test, which focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (internal quotation marks and citation omitted). That test "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Id*. There is no dispute that Reckitt's operation of its Durex Website and K-Y Website are intentional acts satisfying the first prong of the *Calder* effects test. The parties' arguments focus on the second and third prongs of *Calder*, whether Reckitt's conduct in connection with those websites is expressly aimed at California and whether Reckitt knows its conduct is likely to cause harm in California.

Plaintiffs argue that the allegations of the complaint are similar to those that the Ninth Circuit found sufficient to establish express aiming in *Briskin*. In *Briskin*, the putative class plaintiff asserted privacy-related torts arising from the activity of the defendant, Shopify, in connection with the plaintiff's online purchase of athletic wear from a retailer in California. *See id*. at 746. The plaintiff alleged that "in the process of facilitating his credit card transaction for the merchant, Shopify took the opportunity to install 'cookies' on the device he used to buy the athletic wear and that Shopify did so without his knowledge or consent." *Id*. Shopify allegedly used the resulting data to compile a consumer profile that Shopify marketed to California merchants and others. *See id*. The Ninth Circuit found that it had personal jurisdiction over Shopify "because Shopify's allegedly tortious actions deliberately targeted Briskin in California: (1) Shopify concedes that its geolocation technology allowed it to know that Briskin's device was located in California when it installed cookies on Briskin's device; and (2) the complaint alleges that Shopify uses the data gathered by its cookies to compile consumer profiles and then sells them without the consumer's knowledge or consent." *Id*.

The *Briskin* court distinguished *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), in which the Ninth Circuit found that a defendant's operation of a passive website that does nothing more than advertise on the internet is not sufficient to establish minimum contacts with every state in the country from which the website can be accessed. *See Briskin*, 135 F.4th at 752

(citing *Cybersell*, 130 F.3d at 415). As summarized by *Briskin*, *Cybersell* "recognized two significant concepts that advanced our thinking about specific personal jurisdiction as applied to conduct occurring in cyberspace." *Briskin*, 135 F.4th at 752. "First, it recognized that contacts with the forum state could be in the form of electronic contacts, and second, it established that 'something more' than mere passive nationwide accessibility was required to show express aiming at the forum state and, thus, satisfy due process." *Id*. The *Briskin* court found the requisite "something more" in the plaintiff's allegations that Shopify targets California consumers to collect and exploit "personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Id*. at 755-56. The Ninth Circuit rejected Shopify's argument that it does not expressly aim its conduct at California because it operates nationwide. *See id*. at 757. The Ninth Circuit reasoned that "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *Id*. at 758. Based on that reasoning, the *Briskin* court held that "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Id*. (internal quotation marks, citations, and brackets omitted).

The complaint alleges that Reckitt's websites "allow visitors to view information about its products and purchase products." Compl. ¶ 25. At the hearing, counsel for both sides clarified that products cannot be purchased on the websites. However, the complaint describes several ways in which users interact with Reckitt's websites, including "entering data into forms, clicking on links, and making selections[.]" *Id*. Reckitt's websites display privacy policies and offer users the option to "Disable All" cookies on the websites. *Id*. ¶¶ 26-33. Users interact with the websites when they select the "Disable All" button in the cookie banner. *See id*. ¶¶ 35-37. And even after the "Disable All" cookies option is selected, Reckitt allegedly causes third-party cookies to be placed on the user's devices for the tracking and collection of date about the user. *See id*. The complaint alleges that when Plaintiff Frankle visited the Durex Website while located in

California, the website detected that he was in California, presented him with the option to "Disable All" cookies, and thereafter disregarded Frankle's selection of the "Disable All" cookies option by causing third-party cookies and tracking technologies to be placed on Frankle's device. *See id*. ¶¶ 113-22. The complaint makes similar allegations regarding the experiences of Plaintiffs Penning and Santacruz on the K-Y Website. *See id*. ¶¶ 123-141.

The Court finds that under *Briskin*, these allegations are sufficient to show that Reckitt expressly aimed its conduct to California as required under the second prong of the *Calder* effects test. The Court is unpersuaded by Reckitt's argument that its websites are merely passive informational websites that do not give rise to personal jurisdiction under *Cybersell*. As described in the complaint, the websites are interactive in that they elicit an election from the user regarding use of cookies, represent that all cookies will be disabled when the "Disable All" button is selected, and yet affirmatively place cookies and other tracking devices on users' devices that are located in California. Moreover, because the complaint alleges that the websites detect that a user is in California when the "Disable All" cookies option is offered, Defendant knows that the privacy harms to those users will be suffered in California, satisfying the third prong of the *Calder* effects test.

**b. Arising out of Forum Activities**

"The second requirement for specific jurisdiction is that plaintiff's claims must arise out of or relate to the defendant's contacts with the forum State." *Briskin*, 135 F.4th at 760. In *Briskin*, the Ninth Circuit had no difficulty concluding that this requirement was satisfied by allegations that Shopify knew the plaintiff's device was in California and installed software on that device to extract personal data. *See id*. The Briskin court observed that "Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries," and that "Briskin's claims therefore satisfy the second requirement for specific jurisdiction." *Id*. Under the same reasoning, this Court finds that Plaintiffs in the present case have satisfied this requirement.

**c. Reasonableness**

Because Plaintiffs have plausibly alleged facts supporting showing that Reckitt

purposefully directed its activities toward California and its residents, and that Plaintiffs' claims are related to Reckitt's conduct, the burden shifts to Reckitt to "present a compelling case that the exercise of jurisdiction is not reasonable." *Briskin*, 135 F.4th at 761 (internal quotation marks and citation omitted).

The Ninth Circuit has developed a seven-factor balancing test to determine the reasonableness of asserting personal jurisdiction: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Briskin*, 135 F.4th at 761 (citation omitted).

Reckitt argues that the first, third, fifth, sixth, and seventh factors weigh against exercising personal jurisdiction here. As to the first factor, the extent of the defendant's purposeful interjection into the forum state's affairs, Reckitt argues that it has not purposefully directed its activities to California. But as discussed above, the Court finds that Plaintiffs have alleged facts showing the opposite. As to the third factor, Reckitt asserts that its home states of Delaware and New Jersey have their own statutes that regulate online privacy. However, Reckitt does not explain whether or how those statutes conflict with California law. As to the fifth and seventh factors, Reckitt contends that it would be most efficient to resolve this case in either Delaware or New Jersey, and that those states provide adequate alternative forums to resolve this dispute. Again, Reckitt provides not particulars as to why litigation in its home states would be more efficient. Finally, as to the sixth factor, the importance of the forum to the plaintiff's interests, Reckitt contends that because this is a class action, the focus should not be on the named Plaintiffs but rather on the conduct of Reckitt. Reckitt contends that none of its conduct occurred in California. Reckitt cites no authority for the proposition that the plaintiff's interest in litigating in the forum state should be disregarded in class actions. Moreover, the complaint alleges that Reckitt caused cookies to be placed on Plaintiffs' devices in California.

Having considered the relevant factors, the Court finds that Reckitt has not carried its

burden to present a compelling case that the exercise of personal jurisdiction would not be reasonable in this case.

**d. Conclusion**

For the reasons discussed above, the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is DENIED.

**C. Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim**

**1. Legal Standard**

Dismissal of a complaint is appropriate under Federal Rule of Civil Procedure 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). The court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Id*. The court may consider the complaint in its entirety, documents incorporated into the complaint by reference, and matters that are subject to judicial notice. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

**2. Analysis**

Reckitt moves to dismiss all of Plaintiffs' claims for failure to state a claim upon which relief may be granted. Plaintiffs argue that their claims are adequately stated. Following the order of the parties' briefing, the Court addresses the claims as follows: first, the claims brought under the California Invasion of Privacy Act ("CIPA") (Third and Fourth Causes of Action); second, the claim for common law fraud (Fifth Cause of Action); third, the common law privacy claims (First and Second Causes of Action); and fourth, the unjust enrichment claim (Sixth Cause of Action).

**a. CIPA Claims (Third and Fourth Causes of Action)**

Plaintiffs assert two claims under CIPA. The Third Cause of Action alleges violation of California Penal Code § 631(a) based on the theory that Reckitt aided and abetted third-party interceptions of Plaintiffs' communications with Reckitt's websites. The Fourth Cause of Action alleges violation of California Penal Code § Section 638.51 based on Reckitt's alleged installation of a "trap and trace" device without a court order or consent. Reckitt contends that the CIPA claims are subject to dismissal because they are time-barred; the statutes do not apply to online

tracking technologies; Plaintiffs do not allege a "trap and trace" device or pen register; and Plaintiffs do not allege facts showing Reckitt aided and abetted a CIPA violation.

The Court agrees with Reckitt that Plaintiffs' CIPA claims are subject to dismissal as time-barred. "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *Thomas v. Cnty. of Humboldt, California*, 124 F.4th 1179, 1191 (9th Cir. 2024) (internal quotation marks and citation omitted). CIPA claims are governed by a one-year statute of limitations. *See* Cal. Civ. Proc. Code § 340(a). Footnote 1 of the complaint alleges that "On or about March 29, 2024, Plaintiffs' counsel notified Defendant of its ongoing invasions of privacy and alleged violations of law, as described herein." Compl. ¶ 1 n. 1. That allegation indicates that Plaintiffs' claims arise from visits to websites that occurred prior to March 29, 2024. The complaint in this action was not filed until more than one year later, on December 12, 2025. At the hearing, Plaintiffs' counsel stated that the March 29, 2024 notification referenced in footnote 1 of the complaint was on behalf of Frankle only, and therefore dismissal of the CIPA claims asserted by the other Plaintiffs would not be appropriate. The Court advised that because footnote 1 is not limited to Frankle, the CIPA claims will be dismissed as to all Plaintiffs with leave to amend to allege facts showing that the CIPA claims were timely filed as to some Plaintiffs.

As to Reckitt's assertion that CIPA does not apply to online tracking technologies, the Ninth Circuit has stated expressly that "[t]hough written in terms of wiretapping, Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). "It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'" *Id*. (quoting Cal. Penal Code § 631(a)). Reckitt urges this Court to disregard the Ninth Circuit's holding in *Javier*, pointing out that *Javier* is unpublished. While its unpublished status means that *Javier* is not precedential, it does offer guidance regarding the application of CIPA that has been heeded by many district courts within the Ninth Circuit. In *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024), the court found that a claim had been adequately stated under § 631(a) by an Internet user

asserting putative class claims against a website provider for using third-party software to collect and share user data. While it ultimately granted summary judgment for the defendant website operator on a more developed record, *see Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025), the *Doe* court court determined that the § 631(a) claim could go forward at the pleading stage. A number of other courts also have allowed § 631(a) claims to go forward. *See, e.g., In re Meta Android Priv. Litig.*, No. 25-CV-04674-RFL, 2026 WL 1279416, at *7 (N.D. Cal. May 11, 2026) ("Plaintiffs adequately allege that Meta intercepted and eavesdropped on the contents of their communications during transmission."); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1031 (C.D. Cal. 2025) ("However, the second clause of Cal. Pen. Code § 631(a) applies to internet communications."); *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("Because Plaintiffs have stated a claim under section 631(a), Rack Room's motion to dismiss the section 631 claim is denied.").

With respect to California Penal Code § 638.51, the law is less clear whether that provision gives rise to a claim for the type of data collection alleged here. Section 638.51 provides that "a person may not install or use a pen register or a trap and trace device" without a court order or consent. Cal. Penal Code § 638.51(a), (b). A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace" device is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c). At least one court in this district has allowed a pen register/"trap and trace" claim to go forward based on allegations that a third party, Meta, installed tracking tools on tax filing websites in violation of § 638.51(a). *See In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025). Another court in the district has suggested that *some* types of information collected by Internet cookies might fall within the scope of California's pen register provision, for example, IP addresses, although that same court found that information collected by cookies for the purpose of

compiling user profiles does not fall within the scope of § 638.51. *See In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *8. Given the lack of clarity in the law, the Court finds it inappropriate to determine as a matter of law at the pleading stage that the cookies and other tracking software at issue here cannot qualify as pen registers or "tap and trace" devices under § 638.51. Plaintiffs allege that "[t]he Third Parties' cookies and the corresponding software code installed by Defendant on its Websites are each 'pen registers'[.]" Compl. ¶ 196. The Court finds those factual allegations to be sufficient for pleading purposes. This determination is without prejudice to a motion for summary judgment on a more developed record, if appropriate.

Finally, the Court finds unpersuasive Reckitt's argument that Plaintiffs have not pled facts adequate to support their assertion that Reckitt aided and abetted the alleged CIPA violations as required for liability under California Penal Code § 631(a). "Subdivision (a) of section 631 prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978). Liability also may be imposed on a defendant who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things" that are unlawful under California Penal Code § 631(a). Cal. Pen. Code 631(a). Reckitt argues that Plaintiffs' attempt to impose liability against it under an aiding and abetting theory fails because Plaintiffs have not alleged facts showing that Reckitt knew that third parties were violating CIPA. Plaintiffs allege expressly that by configuring its websites so as to cause third-party cookies and tracking devices to be placed on Plaintiffs' devices, "Defendant willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs and Class members using the Third Parties' cookies and to accomplish the wrongful conduct alleged herein." Compl. ¶ 183. That allegation, in the context of Reckitt's conduct as a whole, is sufficient for pleading purposes.

The Rule 12(b)(6) motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the CIPA claims (Third and Fourth Causes of Action) on statute of limitations grounds only.

**b. Common Law Fraud Claim (Fifth Cause of Action)**

Reckitt asserts that Plaintiffs' claim for common law fraud (Fifth Cause of Action) does not satisfy Federal Rule of Civil Procedure 9(b), under which "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). "Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Reckitt argues that Plaintiffs have failed to plead the "when" of the alleged fraudulent conduct, as Plaintiffs do not allege when each of them visited the websites at issue. Reckitt also argues that Plaintiffs have failed to allege what damage resulted from the alleged fraud. In opposition, Plaintiffs argue that their general allegations regarding the timing of their visits to the website are adequate, and that they have alleged the harm they suffered.

The Court agrees with Plaintiffs that they have adequately alleged damage resulting from Reckitt's alleged fraud, namely, harm to their privacy rights. However, the Court finds that Plaintiffs have not alleged sufficient facts about when they visited the websites to satisfy Rule 9(b). Plaintiffs allege only that they visited the websites at unspecified points in time during the last four years. *See* Compl. ¶¶ 3, 103, 113, 123, 133. The statute of limitations for fraud is three years. *See* Cal. Civ. Proc. Code § 338(d). While Plaintiffs need not plead around the statute of limitations, which is an affirmative defense, the complaint is so devoid of facts regarding when the alleged conduct occurred that Reckitt cannot fairly defend the claim.

The Rule 12(b) motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the common law fraud claim (Fifth Cause of Action).

**c. Privacy Claims (First and Second Causes of Action)**

Reckitt seeks dismissal of Plaintiffs' common law privacy claims – the First Cause of Action for Invasion of Privacy and the Second Cause of Action for Intrusion Upon Seclusion. Reckitt contends that Plaintiffs have not alleged facts showing that they had a reasonable

expectation of privacy or that any intrusion occurred in a highly offensive manner. As discussed above in the section addressing Article III standing, both invasion of privacy and intrusion upon seclusion require allegations of 'highly offensive' interferences with or disclosures of private information. *Popa*, 153 F.4th at 791. The Court has concluded that Plaintiffs may be able to allege the requisite "highly offensive" conduct, but Plaintiffs have not done so yet because the current iteration of the complaint is framed in terms of the collective class experience or the experience of a composite consumer. Plaintiffs have not alleged sufficient facts regarding their specific experiences with Reckitt's websites.

The Rule 12(b) motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the common law privacy claims (First and Second Causes of Action).

**d. Unjust Enrichment Claim (Sixth Cause of Action)**

The unjust enrichment claim is grounded in the fraud claim. As discussed above, the fraud claim is subject to dismissal with leave to amend. The unjust enrichment claim therefore is subject to dismissal as well.

The Rule 12(b) motion to dismiss is GRANTED WITH LEAVE TO AMEND as to the unjust enrichment claim (Sixth Cause of Action).

**D. Motion to Strike under Rule 12(f)**

**1. Legal Standard**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and citation omitted). "If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits." *Ambrozewicz v. 6Sense Insights, Inc.*, 804 F. Supp. 3d 1026, 1030-31 (N.D. Cal. 2025).

United States District Court
Northern District of California

**2. Analysis**

The complaint contains references to numerous websites that are allegedly owned and operated by Reckitt but do not appear to have been visited by Plaintiffs. Reckitt asks the Court to strike allegations regarding websites that Plaintiffs did not visit. In opposition, Plaintiffs contend that the websites in question operate the same way as the websites they did visit and therefore are relevant to the claims asserted in this case.

In the Court's view, litigation of allegations regarding websites that were not visited by Plaintiffs could result in the expenditure of time and money on issues that are irrelevant to this litigation. The Court agrees that the unvisited websites could be relevant if they are sufficiently similar to the websites Plaintiffs visited. However, as presently framed, the complaint does not allege facts showing such similarities. Instead, the complaint merely lumps both types of websites – those visited by Plaintiffs and those not visited by Plaintiffs – together in string citations. *See, e.g.*, Compl. ¶¶ 1, 34, 35. The Court therefore finds it appropriate to grant the motion to strike with leave to amend so that Plaintiffs may allege facts demonstrating the similarities between the visited and unvisited websites, and that the inclusion of the unvisited websites in this action is appropriate.

The motion to strike pursuant to Rule 12(f) is GRANTED WITH LEAVE TO AMEND.

//

//

//

//

//

//

//

//

//

//

//

United States District Court
Northern District of California

## III. ORDER

(1) Defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is GRANTED WITH LEAVE TO AMEND.

(2) Defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is DENIED.

(3) Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim is GRANTED WITH LEAVE TO AMEND as to all claims.

(4) Defendant's Rule 12(f) motion to strike is GRANTED WITH LEAVE TO AMEND.

(5) Any amended complaint shall be filed within 21 days after the date of this order, or by August 21, 2026. Amendment shall be limited to the deficiencies discussed in this order. Plaintiffs may not add new parties or claims without prior leave of the Court.

Dated: July 31, 2026

BETH LABSON FREEMAN
United States District Judge